## SUPREME COURT.

THE PEOPLE, *ex rel.* DE LANCEY KENNEDY, appellants agt. THE MANHATTAN GAS LIGHT COMPANY, respondents.

This court have authority to direct, by *mandamus*, a *gas company* to furnish gas to persons who under provisions of their charter, have a right to receive it, and who offer to comply with the general conditions on which the company supply others.

Section 6 of the charter of the *Manhattan Gas Light Company* in the city of New York, provides that " on the application in writing of the owner or occupant of any building or premises within one hundred feet of any main laid down by such company, and payment by him of all money due from him to the company, the company shall supply gas," &c. Where a person complies with this provision, by making his application in writing, &c., upon which the company furnish him gas for several months, when they refuse to furnish gas further on account of a former indebtedness due from such person to the company under a former contract, the company cannot be compelled to continue to furnish gas to such person, on the ground that they had waived their right to insist upon payment of the former indebtedness by not demanding it when the application was made.

*New York General Term, November,* 1865.

*Before* INGRAHAM, *P. J.,* LEONARD *and* BARNARD, *Justices.*

THIS was an application for a mandamus requiring the defendants to supply the relator with gas at his house No. 121 West Sixteenth street, New York, which was denied

by Judge BARNARD, and the relator appeals. The relator had been supplied with gas under the contract set forth in the moving papers, the company having accepted ten dollars deposit, and supplied him with gas for nine months. The company then discovered an indebtedness of four years standing due to them by the relator, took away his meter, and declined to supply him with gas until the debt in arrears was paid. No non-payments exist under the last contract.

TIMOTHY CRONIN, *for appellant.*

I. The appeal involves the construction of section 6, of the act of April 14, 1859, which is as follows : " On the application in writing of the owner or occupant of any building or premises within one hundred feet of any main laid down by any such company, and payment by him of all money due from him to the company, the company shall supply gas." The construction to be given to this section cannot be of any doubt. It is explicit. *At the time of the application in writing*, they may insist upon the payment of arrears due from an applicant. If they fail to insist upon payment of arrears *then*, and accept the deposit and furnish gas, they waive this provision of the statute made for their benefit. (*Penniman* agt. *Elliott*, 27 *Barb.* 315 ; *Buel* agt. *Trustees of Lockport*, 3 *Com.* 197 ; *Williams* agt. *Potter*, 2 *Barb.* 316.) That no right existed to refuse to supply, is clear from the ninth section of the act of 1840. There the grounds of refusal to supply are set forth. None of them existed in this case, and were not claimed to be, at the time of defendants' refusal.

II. The liability of the defendants to be proceeded against is clear. Now the question is, by what remedy ? Upon principle, the defendants, a corporation, having accepted the relator's money, and executed a special contract, should be compelled to discharge its corporate func-

tions, and specifically perform its contract. The purpose of its creation should be fulfilled, and its corporate franchise used for the benefit of the people who created it. No remedy should be required against it except one to enforce the performance of the *trusts* which they hold from the legislature. This corporation is simply a *trustee* for the people, to furnish gas upon certain conditions to an applicant, and they should be specifically required to furnish it, and no *other remedy* should be deemed necessary than a mandamus, for default on their part. This principle should govern the courts in all cases where a corporation neglect or refuse to execute the trusts of their franchise of a public character. Upon authority, the remedy against the defendants *after the execution* of the contract, was by mandamus; they had no discretion to exercise then, their duty was purely ministerial; that is, to execute their corporate functions. (*The People* agt. *Steele,* 2 *Barb.* 397; *Rex* agt. *Barker,* 3 *Burr,* 1265; *People* agt. *Flagg,* 16 *Barb.* 503; *Runkel* agt. *Winemiller,* 4 *Har. & McHen.* 430; 23 *Wend.* 458; *The People* agt. *Mead,* 24 *N. Y. R.* 114; *The People* agt. *Supervisors, &c.* 35 *Barb.* 426, *affirming* 23 *Wend.* 458.)

This is not the case of the exercise of a discretionary power by the defendants. They exercised their discretion when they accepted the deposit for one year, and executed the contract to furnish the gas, and waived the payment of arrears. From that time they had no discretion; that was discharged; their duty, therefore, became purely ministerial. The language of the statute is "*the company shall supply,*" leaving no discretion to be exercised.

III. The relator has no other adequate and specific remedy but the writ of mandamus. No action will lie under section 6, for the penalty therein mentioned. The refusal to furnish gas, which gives the party an action for the penalty, must be *at the time of the application in writing.* The refusal in this case was nine months after this application,

and the defendants would, in an action for the penalty, insist that the relator could not recover because there was no refusal within the meaning of the statute.    There is no statutory right to the penalty in the relator, and no specific remedy given him by statute.    Besides, the action for the penalty furnishes no adequate remedy to the relator. Gas for illuminating purposes in a large city, where the dwellings are built expressly for its consumption, is indispensable to the comfort and wants of its inhabitants, and gas companies should not be allowed to arbitrarily deprive the citizen of its use.    Gas has ceased to be a luxury, and become a necessity, and no adequate remedy exists at law by action against a corporation, for its deprivation.    The demands for gas are immediate in a family using it, and no remedy by action against the defendants is adequate to an immediate restoration of it.

IV.  In *Rex* agt. *Barber* (*cited ante*), Lord MANSFIELD held that this writ was introduced to prevent disorder from a failure of justice and defect of police.    Therefore it ought to be used on all occasions where the law has established no specific remedy, and where in justice and good government there should be one.    No gas light corporation should be allowed the whim or the right to supply darkness rather than light to a great city, when its demands allowed by statute, have been fully paid, nor to disregard its solemn written contracts made with the citizen, upon a consideration to perform its chief corporate function.    Suppose the company should refuse to supply the city corporation under the same circumstances of refusal to the relator, must the city be left in darkness, and resort to its remedy for the penalty ?    The courts would unhesitatingly issue the writ in such a case.    Why not, therefore, in this ?   Public interest and policy demand it in each case.

So far have these principles been applied that the courts have held that the writ lies against a corporation to exercise their functions according to law, notwithstanding they

People, *ex rel.* Kennedy agt. The Manhattan Gas Light Company.

may be liable to an action for refusal. (*McCullough* agt. *Mayor*, 23 *Wend.* 458; *Matter of Trustees, &c.* 1 *Barb.* 34; *People* agt. *Mead*, 24 *N. Y. R.* 114; *cited ante*, 35 *Barb.* 426.) Public duties from a corporation are different from private. Duties to the public will be enforced by the writ when private rights would be disregarded. For sanitary and other public interests, less liability to fires by the use of gas, less liability to accidents from illuminating oils, and greater economy, the writ should issue against a gas light company. The principle to be deduced from the cases is this : The writ will lie where public interests are to be enforced against a corporation, though a remedy at law may exist in favor of the relator. This doctrine is fully established upon a review of all the authorities by the court in the case of *The People* agt. *Mead* (24 *N. Y.* 114). The order of Judge BARNARD should be reversed, and the writ issued.

BENJAMIN W. BONNEY *and* THATCHER M. ADAMS, *for respondents.*

By the court, INGRAHAM, P. J. I think there can be no doubt about the authority of this court to direct the respondents to furnish gas to persons who under provisions of their charter have a right to receive it, and who offer to comply with the general conditions on which the company supply others. They possess by virtue of their charter, powers and privileges which others cannot exercise, and the statutory duty is imposed upon them to furnish gas on payment of all moneys due by such applicants.

We are left then to inquire whether the relator was in a condition to demand from the company this supply. It appears by the papers used on the motion, that the relator commenced taking gas in 1858, at No. 61, in Seventh avenue, and was supplied with gas by the company until 28th December, 1861. That he paid for the gas so received up

to 19th August, 1861, and that for gas furnished after that date he has not paid. It also appears that in January, 1865, the respondents sued the relator, and obtained a judgment against him for the amount due therefor, which still remains unpaid. In May, 1864, the relator applied to the company for gas at 121 West Sixteenth street, which was furnished to him by the company without objection on account of the former indebtedness, until 9th of February, 1865, when the company shut off the supply of gas, and refused to furnish any more. It also appears that the relator in answer to claim for payment of this indebtedness, represents himself as insolvent, and unable to pay the judgment.

There is nothing in the charter of the company which requires them to make the objection that the applicant was indebted to them at the time of the first application. It would be unreasonable to suppose that in every instance they could ascertain such indebtedness. If at any time the party is so indebted, the company may refuse to furnish, and more especially should this be so when the relator avows his insolvency, and his inability to pay for gas furnished previously. The attempted denial of liability for this bill by the relator, will not aid him. The company have obtained a judgment against him. This is not disputed, and no attempt is made by him to set it aside. So long as that remains in force it is conclusive against him.

The order appealed from should be affirmed, with $10 costs.