Argued 25 April; decided 28 May; rehearing denied 13 August, 1900.

## MACKIN v. PORTLAND GAS COMPANY.

[49 L. R. A. 596; 61 Pac. 134; 62 Pac. 20.]

MANDAMUS AGAINST QUASI PUBLIC COMPANIES.

1.   There is now no question of the right to compel by mandamus companies engaged in furnishing light, water or heat to the public to supply all persons along their conduits who comply or offer to comply with their reasonable rules and regulations: *Haugen* v. *Albina Water Co.*, 21 Or. 411, followed.

GAS COMPANIES — RULES — DISCONTINUING SERVICE.*

2.   A rule of a gas company, consented to by the consumer, that it will cease to furnish gas when a consumer becomes delinquent in paying for gas already furnished, is a reasonable regulation.

IDEM.

3.   Such a rule may be enforced by discontinuing the gas supply at one building until payment of a delinquent bill for gas previously furnished at another building.

RIGHT TO MANDAMUS TO OBTAIN GAS.

4.   Before a writ of mandamus will issue the right thereto must clearly appear; thus, the writ will not issue to compel a gas company to furnish a consumer with light or heat pending the settlement of a disputed bill for gas previously furnished, whatever may be the rule as to enjoining the company from turning off the gas under the same circumstances.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Mandamus by Sam Mackin against the Portland Gas Company to compel the defendant company to supply the plaintiff with gas at his place of business, No. 107 Fourth Street, in the City of Portland.   The alternative writ alleges, in substance, that the defendant is a corporation organized for the purpose of, and is now engaged in, supply-

*NOTE.—This case is reported in 51 Cent. Law Jour. 130, with a note: "Right of Gas Companies to Discontinue the Supply of Gas for Nonpayment of a Disputed Bill."  See, also, a note on same subject in 14 L. R. A. 969; *Tacoma Hotel Co.* v. *Tacoma Land & Water Co.*, 28 Am. St. Rep. 35.—REPORTER.

ing gas to the City of Portland and its inhabitants, and, under a franchise from the city, has mains laid in the streets for such purpose; that on September 27, 1899, the plaintiff, who was engaged in the business of conducting an oyster eating-house and restaurant at No. 107 Fourth Street, requested the company to furnish him gas, and, upon a deposit by him of seven dollars as security, the company made the proper connections with his premises and supplied gas to him; that on October 27 it presented its bill for gas consumed up to that time, amounting to $4.95, which the plaintiff paid; that plaintiff used gas from the twenty-seventh of October, until the eleventh of November, for which he is able, ready, and willing to pay upon the presentation of a bill therefor; that he is solvent, and able to satisfy any judgment that the defendant may procure against him; that on the eleventh of November the defendant demanded payment of a delinquent gas bill of $5.25, which he refused to pay, whereupon it shut off the gas from his premises; that defendant's pretense for this action is that in the month of March, 1897, the plaintiff was engaged in business at No. 284 Morrison Street, and was using gas supplied by the company, but that on the sixteenth of the month he sold out, and notified the company that he no longer desired to be furnished with gas, and would not be responsible for any supplied thereafter, notwithstanding which it presented him a bill of $5.25, which he then and there and ever since has in good faith disputed and refused to pay; that at the time defendant threatened to discontinue his gas at No. 107 Fourth Street he offered to deposit sufficient money in court to answer any judgment that it might obtain against him on such disputed bill, and requested defendant to bring an action for the purpose of testing his liability thereon.

The answer of the defendant admits that it severed the connection between its gas main and plaintiff's premises, and shut off the supply of gas therefrom, as alleged in the

alternative writ, but denies the other material allegations; and, for an affirmative defense, avers that on the twenty-sixth of March, 1897, plaintiff was indebted to it in the sum of $12.25 for gas furnished at No. 284 Morrison Street, and had on deposit with it as security therefor the sum of $7, which it applied to the payment of plaintiff's bill, leaving a balance of $5.25 due, which the plaintiff has refused and neglected to pay; that such gas was furnished in compliance with a written request made by the plaintiff, in words and figures as follows: "Portland, Oregon, November 2, 1896. To the Directors of the Portland Gas Co.—Gentlemen: You will furnish gas to premises No. 284 Morrison Street, and I will be responsible for the same, until further notice. And I do further agree to comply with your rules and regulations. Respectfully, [signed] Sam Mackin"; that one of defendant's rules at that time was, and still is, that, "in default of the regular payment of a bill, the company will discontinue the supply of gas until payment is made," which was at the time plaintiff made his application, ever since has been, and now is, well known to him; that previous to severing the connection between its gas mains and plaintiffs' premises, it demanded· payment of the delinquent bill for $5.25, and informed plaintiff that if he paid such bill the gas would not be discontinued; that on November 11, 1899, and ever since, it has been, and now is, ready and willing to make proper connections and turn on the gas at plaintiff's premises upon the payment of such amount, and so informed the plaintiff at the time the gas was shut off. To this answer a demurrer, on the ground that it does not state facts sufficient to constitute a defense, was sustained, and, defendant declining to amend or plead further, a peremptory writ was issued, commanding it to forthwith turn on the gas to the premises of the plaintiff at No. 107 Fourth Street. From this judgment the defendant appeals.   REVERSED.

For appellant there was an oral argument by *Mr. John M. Gearin,* with a brief over the name of *Dolph, Mallory, Simon & Gearin.*

Though the remedy by mandamus is legal, yet by analogy to the practice in equity, the relator must come with clean hands: Spelling, Extr. Rel., §§ 1380, 1386; *Commonwealth v. School Directors,* 4 Pa. Dist. R. 314.

The court will act on the facts appearing of record, both in the pleadings and the affidavits or exhibits attached thereto: *American Waterworks Co.* v. *State ex rel.,* 31 Neb. 445 (48 N. W. 64); *State ex rel.* v. *Supervisors of Delafield,* 64 Wis. 218 (24 N. W. 905); *State ex rel.* v. *Grace,* 20 Or. 154 (25 Pac. 382); *State ex rel.* v. *Sherman County Com'rs,* 31 Neb. 465 (48 N. W. 146); *People ex rel.* v. *St. Louis & S. F. R. R. Co.,* 47 Hun, 543; *People ex rel.* v. *Board of Police,* 46 Hun, 296.

Where the return to an alternative writ of mandamus presents traversable issues, it is error for the court to grant a peremptory writ on sustaining the demurrer of the relator thereto *ore tenus: State ex rel.* v. *Supervisors of Delafield,* 64 Wis. 218 (24 N. W. 905); *State ex rel.* v. *Sedalia Gaslight Co.,* 34 Mo. App. 501; *People ex rel.* v. *Manhattan Gaslight Co.,* 45 Barb. 136.

For respondent there was an oral argument by *Mr. Martin L. Pipes,* with a brief over the names of *Pipes & Tifft* and *John M. Pipes.*

The gas company cannot shut off the gas to coerce the payment of a bill for gas furnished to other premises of the owner: *Gaslight Co.* v. *Colliday,* 25 Md. 1; *Lloyd v. Wash. Gaslight Co.,* 1 Mackey, 331; *Cadieux* v. *Montreal Gas Co.,* 18 Can. L. T. 303, 28 Can. S. C. 382.

The company cannot coerce payment of an old and disputed bill by shutting off the gas; nor can it require the con-

sumer to pay the disputed bill, and then sue to recover it: *Wood* v. *Auburn,* 87 Me. 287 (29 L. R. A. 376, 32 Atl. 906); *Sickles* v. *Manhattan Gaslight Co.,* 64 How. Pr. 33; *State ex rel.* v. *Nebraska Teleph. Co.,* 17 Neb. 126 (52 Am. Rep. 404, 22 N. W. 237); *Crumley* v. *Watauga Water Co.,* 99 Tenn. 420 (41 S. W. 1058).

The company is not the sole judge of the validity of the bill, and cannot deprive the plaintiff of his right to resort to the courts: *Smith* v. *Gold & Stock Tel. Co.,* 42 Hun, 454; *Sickles* v. *Manhattan Gaslight Co.,* 64 How. Pr. 35; *Morey* v. *Metropolitan Gaslight Co.,* 6 Jones & S. 185; *State ex rel* v. *Nebraska Teleph. Co.,* 17 Neb. 126 (52 Am. Rep. 404, 22 N. W. 237); *American Waterworks Co.* v. *State ex rel.,* 46 Neb. 194 (30 L. R. A. 448, 50 Am. St. Rep. 610, 64 N. W. 711); *Shepard* v. *Milwaukee Gaslight Co.,* 6 Wis. 539 (70 Am. Dec. 479).

Mandamus is the proper remedy: *Haugen* v. *Albina Light & Water Co.,* 21 Or. 418 (14 L. R. A. 424, 28 Pac. 244); *State ex rel.* v. *Nebraska Teleph. Co.,* 17 Neb. 126 (52 Am. Rep. 404, 22 N. W. 237).

Doubt as to whether the facts of the particular case present the conditions upon which the defendant is to act may require a refusal of the writ, but a doubt as to the existence of the duty in matter of law will not. It is the duty of the court to resolve such doubt: *State ex rel.* v. *Wilson,* 123 Ala. 259 (45 L. R. A. 772, 26 South. 482).

MR. JUSTICE BEAN, after making the foregoing statement of the facts, delivered the opinion of the court.

The only question on this appeal is whether the court below erred in sustaining the demurrer to defendant's answer, and ordering a peremptory writ. Briefly, the facts are that in March, 1897, the plaintiff purchased gas of the defendant for use at No. 284 Morrison Street, under a contract which provided that, in default of the regular payment of a bill,

the company would discontinue the supply until payment should be made. Some time in that month he quit using the gas, and left, as the defendant alleges, an unpaid bill of $5.25. Thereafter, and in September, 1899, he again applied to the company for gas to be used at No. 107 Fourth Street, and it was furnished him up to November 11, when he was notified by the defendant that unless he paid the old bill it would be discontinued. This he refused to do, and the company cut off the gas. Upon these facts, the inquiry is whether the plaintiff is entitled to a writ of mandamus to compel the defendant to turn on the gas.

1. The right of a court to compel by mandamus a company engaged in furnishing gas for general consumption to supply all persons along its mains or conduits who offer to and do comply with its rules and regulations is undoubted and unquestioned: *Haugen v. Albina Light & Water Co.,* 21 Or. 411 (14 L. R. A. 424, 28 Pac. 244) ; *State ex rel. v. Nebraska Teleph. Co.,* 17 Neb. 126 (52 Am. Rep. 404, 22 N. W. 237) ; *Crumley v. Watauga Water Co.,* 99 Tenn. 420 (41 S. W. 1058); *Shepard v. Milwaukee Gaslight Co.,* 6 Wis. 539 (70 Am. Dec. 479, and note, 27 Am. Law Reg. 277).

2. And the authorities are agreed that such a company may adopt and enforce whatever reasonable rules and regulations may be necessary to protect its interests, which would include one providing that the supply of gas may be discontinued if a customer fails or neglects to pay his bills when due: *American Waterworks Co. v. State ex rel.,* 46 Neb. 194 (50 Am. St. Rep. 610, 64 N. W. 711, 30 L. R. A. 447) ; *State ex rel. v. Sedalia Gaslight Co.,* 34 Mo. App. 501 ; *Tacoma Hotel Co. v. Tacoma Light & Water Co.,* 3 Wash. St. 316 (28 Pac. 516, 14 L. R. A. 669, 28 Am. St. Rep. 35).

3. The contention for the defendant is that, under its rules in force at the time the contract was made with the plaintiff, and which became a part of the contract, it had a

right to discontinue the supply of gas to a customer at one
set of premises until payment should be made of a delinquent
bill for gas furnished him at another, and in this we think
it is supported by the authorities.    The cases of *People* v.
*Manhattan Gaslight Co.,* 45 Barb. 136, and *Montreal Gas
Co.* v. *Cadieux* [1899] App. Cas. 589, are in point.    In the
former it appears that the relator commenced taking gas in
1858 at No. 61 Seventh Avenue, and was supplied with same
until the twenty-eighth of December, 1861.    He paid his bills
up to the nineteenth of August, 1861, but not thereafter.    In
May, 1864, he applied for gas at No. 121 West Sixteenth
Street, which was furnished without objection on account
of the former indebtedness until the ninth of February, 1865,
when the company shut off the supply, and refused to fur-
nish any more because of his failure to pay the balance due
for gas furnished at No. 61 Seventh Avenue.    A judgment
denying an application for a mandamus requiring the de-
fendant to supply gas at No. 121 West Sixteenth Street
was affirmed.    In *Montreal Gas Co.* v. *Cadieux* [1899] App.
Cas. 589, the statute defining the powers of the gas company
provided that "if any person    *    *    *    supplied with gas
by the company shall neglect to pay any rate, rent, or charge
due to the    *    *    *    company at any of the times fixed for
the payment thereof    it    shall    be    lawful   for   the   company
*  ·  *    *    on giving twenty-four hours' previous notice to
stop the gas from entering the premises, service pipes, or
lamps of any such person    *    *    *    by cutting off the said
service pipe or pipes, or by such other means as the com-
pany shall think fit."    The respondent was a customer of the
company.    He had two sets of premises in Montreal—No.
1125 Notre Dame Street, and No. 282 St. Charles Borromee
Street, where he resided—and took gas for both.    The com-
pany cut off the supply from No. 1125 Notre Dame Street
for nonpayment of the bill for gas furnished to that house.
This measure had no effect in producing payment, where-

upon the company gave notice that unless the other bill was paid it would cut off the gas at his residence, and, after repeated notices to that effect, carried its threats into execution, and cut off the gas at his residence, as well as at No. 1125 Notre Dame Street; whereupon he brought an action to compel it to continue the supply of gas at his residence, and, upon appeal to the privy council, it was held that he was not entitled to the relief demanded. In the opinion it is said: "The only question is a question of fact. Is the respondent, in the words of the act, a person supplied with gas by the company who has neglected to pay a rate, rent, or charge due to the company at the time fixed for the payment thereof? It cannot be disputed that he is. The occasion, therefore, has arisen which authorizes the company to stop the gas from entering his service pipes. There is nothing in the act to limit the right of the company to the service pipes of the defaulter in a particular building, or connected with a particular meter, in respect to which the default has been committed. There is nothing in the act to throw the rate, rent, or charge for gas upon the premises for which the supply is furnished, or to make it payable out of the premises of the defaulter. The supply is to the consumer, and the default is the consumer's default. His liability to the company is a liability for the whole of the debt which he owes them at the time."

This argument seems particularly applicable to the rule of the defendant. There is nothing in it limiting the right of the company to shut off the gas to the particular building in which default has been committed, but the provision, in effect, is that, in default of the regular payment of a bill by a customer of the company, it will not supply gas to him until payment is made. The cases principally relied upon by plaintiff are distinguishable from the one at bar. *Wood* v. *City of Auburn,* 87 Me. 287 (32 Atl. 906, 29 L. R. A. 376), was a suit to enjoin the defendant from cutting off the sup-

ply pending a judicial investigation; and, besides, in that case, and also in *State ex rel.* v. *Nebraska Teleph. Co.,* 17 Neb. 126 (52 Am. Rep. 404, 22 N. W. 237), there was no rule of the company or stipulation in the contract providing for shutting off the supply in default of payment of bills. In *Gaslight Co.* v. *Colliday,* 25 Md. 1, the contract provided that gas should be introduced into the premises described, "and that in default of payment for gas consumed in said premises the flow of gas shall be stopped until the bill be paid," etc., and the court very naturally held that under such rule the company could not shut off the supply at one building on account of a default in payment for gas furnished another. *Lloyd* v. *Wash. Gaslight Co.,* 1 Mackey, 331, was also based upon the construction given by the court to the contract between the company and the consumer. If, therefore, we take the allegations of the answer to be true (as we are bound to do on this appeal), the defendant, under its rules and the terms of the contract, had a right to refuse to supply the plaintiff with gas at No. 107 Fourth Street, because he had made default in payment for gas previously furnished to him at other premises.

4.   The plaintiff contends, however, that, taking the alternative writ and the answer together, it appears that there is an honest controversy between the company and the plaintiff concerning the bill for gas furnished at No. 284 Morrison Street, and the defendant had no right or authority to cut off the supply in order to coerce the payment of the disputed bill. But this is an application for a peremptory writ of mandamus, and to entitle plaintiff to the relief demanded his right must be clear. If he has paid or tendered payment of the rates legally due, he is entitled to the writ; otherwise, not: *People ex rel.* v. *Green Island Water Co.,* 56 Hun, 76 (9 N. Y. Supp. 168). It is said to be well settled that a court of equity will, in cases of this character, prevent by injunction the shutting off of the supply pending the de-

termination of a dispute between a customer and the company:   27 Am. Law Reg. 283; *Sickles* v. *Manhattan Gaslight Co.,* 64 How. Pr. 33; *Wood* v. *City of Auburn,* 87 Me. 287 (29 L. R. A. 376, 32 Atl. 906).   But a mandamus is an affirmative remedy, and before a peremptory writ will issue the plaintiff's right must be clearly established:   2 Spelling, Extr. Relief, § 1386; *American Waterworks* v. *State ex rel.,* 31 Neb. 445 (48 N. W. 64); *State ex rel.* v. *Board of Sup'rs of Delafield,* 69 Wis. 264 (34 N. W. 123).   We are of the opinion, therefore, that the court below erred in sustaining the demurrer to the answer.   The judgment is reversed, and the cause remanded for such further proceedings as may seem proper, not inconsistent with this opinion.

REVERSED.

Decided 13 August, 1900.

ON MOTION FOR REHEARING.

*Mr. Martin L. Pipes* for the motion.

The gas company demanded and received a deposit of $7 from Mackin as security for the very gas it is withholding, and it has the deposit still.   Under this condition the decision of the court necessarily includes the proposition that a rule of the company is reasonable that permits it to refuse gas to a customer who has deposited security for his bill, or paid for his gas in advance, because he owes for other gas already consumed.   Such a proposition is not just and is not the law.   If that rule is to be upheld, it must be on the principle that a gas company has a remedy for the collection of debts due it that no other citizen has.   Such a rule is not for its protection, for it is already protected by the deposit.   The enforcement of this rule is coercion pure and simple.   The company cannot shut off the supply that has been paid for in

38 OR.—9.

advance, because an old bill is unpaid: *Merrimac River Sav. Bank* v. *Lowell,* 152 Mass. 556 (10 L. R. A. 122, 26 N. E. 97).

When the company received and kept the money to pay for the gas it was bound to furnish that gas; our right is clear to the gas already paid for on the conceded facts, and we are entitled to the writ. The court has fallen into the error of supposing that the question to be decided is the justness of the bill, instead of the fact of the dispute. When a bill is honestly disputed, it is the duty of the company to furnish the gas, and let the dispute be settled by an action. It is never the duty of the consumer to prove that he does not owe the bill, but the company must prove that he does.

PER CURIAM. The deposit of seven dollars, mentioned in the petition for rehearing, it is alleged by the alternative writ was made at the time plaintiff applied for gas at No. 107 Fourth Street, as "security for the payment of the reasonable charges" for gas furnished, "which sum the said company received and still holds for such purpose." It is also averred and admitted that from the twenty-seventh of September to the eleventh of November, 1899, the plaintiff used gas for which he has not paid, and for which the money remains a security. The record does not disclose the amount of the unpaid bill. It may be over or under the amount of the deposit. In either case, the contention that such deposit is, in effect, a payment in advance for the gas which the company now refuses to furnish is clearly without merit. The other questions so ably argued in the petition were all considered on the original hearing, and we see no reason to depart from the conclusions then reached. The petition for rehearing is denied.    REHEARING DENIED.