ROGER S. POWELL and Another v. CITY OF DULUTH and Another.[1]

December 4, 1903.

Nos. 13,626—(108).

**Water Rates—Removal of Meter.**

    The board of water commissioners in the city of Duluth established water rates for private residences, at so much per month, based upon the number of bowls, tubs, etc., and adopted an ordinance with reference to meters which provided that they might be installed at the wish of the consumer or at the pleasure of the board, and that all persons were forbidden to interfere with or remove such meters without permission by

[1] Reported in 97 N. W. 450.

the board, and in practice adopted the rule that, after a meter had been placed, a customer could not return to the flat rate without the board's consent. Before the city owned the water system, and while it was being operated by a private corporation, appellants made application for and had installed a meter which they continued to use for some time after the city acquired ownership. Appellants made application for a change from the meter to the flat rate system, which the city refused. In an action brought by the consumer to enjoin the city from invading the premises for the purpose of replacing the meter which had been taken out for repair, and from cutting off the water supply in case the meter was not reinstated by the consumer, and to compel the city to furnish water at the established flat rates, *held*: Water rates are not taxes within the meaning of those constitutional provisions requiring a uniformity of taxation, but are merely the price paid for water by the consumer as a commodity, and the relation between the city and the consumer is that of contract. The ordinance and rule for the enforcement of the use of meters were not arbitrary and unreasonable. The finding of the court is sustained by the evidence to the effect that water was furnished to all of the consumers as nearly as possible at actual cost; that the flat rates were made as nearly as possible uniform, and to conform to the meter rates, which were reasonable and without discrimination as between appellants and other consumers. *Held* also, that the fact that appellants would be required to pay fifty or fifty-five cents a month more by the meter than the flat rate system, as based upon their prior experience, does not tend to show the meter rates unreasonable, or that any discrimination was made between appellants and other consumers.

Action in the district court for St. Louis county to restrain defendants, City of Duluth and L. N. Case, the manager of its water works, from invading the premises of plaintiffs for the purpose of placing therein a water meter, and from cutting off the water supply from said premises. The case was tried before Dibell, J., who found in favor of defendants. From an order denying a motion for a new trial, plaintiffs appealed. Affirmed.

*Roger S. Powell*, for appellants.

The duty of supplying the plaintiffs with water cannot be questioned. It is equally clear that this duty must be performed for all residents without discrimination. To that end it is expressly required by the charter that the rules and regulations shall be written and when written must show, at the least, that fairness, absence of discrimina-

tion, and uniformity are intelligently aimed at.   Const. art. 9, § 1; San-born v. Commrs. of Rice Co., 9 Minn. 258 (273).

This is not a private plant, nor one operated for gain; on the contrary, it is partly supported by a general tax, and the rules of taxation should govern.   Whatever may be the basis of the taxation, the requirement that it shall be uniform is universal.   Cooley, Const. Lim., 615–617.   As to what constitutes uniformity, see Livingston v. City, 41 Ga. 21; Mayor v. Dargan, 45 Ala. 310.

The defendant city was under legal obligation to supply the plaintiffs with water at the proper price, and it was the plaintiffs' right to have it thus supplied.   Panton v. Duluth G. & W. Co., 50 Minn. 175.   All persons are entitled to have the same service on equal terms and at uniform rates.   Griffin v. Goldsboro, 122 N. C. 206; Merrimack v. City, 152 Mass. 556; Howell v. Bristol, 8 Bush. 493.   A public water company can be compelled to furnish a consumer with water at the same minimum rate furnished other persons.   See also American v. State, 46 Neb. 194, and State v. Joplin, 52 Mo. App. 312.

Not only was the defendant city requiring the plaintiffs to take water through a meter but also requiring the plaintiffs to supply the meter as is contemplated in their Rule 6.   Water companies cannot charge consumers for meters nor cut off water for nonpayment for meters.   Red Star v. Jersey City, 45 N. J. L. 246; also American v. State, 46 Neb. 199, supra.   See also on the subject of classification and discrimination State v. Elofson, 86 Minn. 103; Connolly v. Union Sewer Pipe Co., 22 Sup. Ct. Rep. 431; State v. Canda Cattle Car Co., 85 Minn. 457.

*Oscar Mitchell,* for respondents.

That water rates are taxes, and that therefore the constitutional provisions as to uniformity of taxation, and the decisions of the courts requiring uniformity of taxation, apply, has been repeatedly denied; and so far as I have been able to find has never been upheld.   It has been denied in the following cases:   Wagner v. City, 146 Ill. 139; Silkman v. Board, 152 N. Y. 327; Ampt v. Cincinnati (Ohio) 35 L. R. A. 736; Provident Institution v. Mayor, 113 U. S. 506; Vreeland v. O'Neil, 36 N. J. Eq. 399; Vreeland v. Jersey City, 43 N. J. L. 135; Jones v. Board, 34 Mich. 273; Preston v. Board, 117 Mich. 589.

As to the rights of the city authorities to place a water meter upon plaintiffs' service pipe, and to charge the meter rate, see Foster v. Monroe, 82 N. Y. Supp. 653; Exchange v. Roanoke, 90 Va. 83; Parker v. City, 1 Allen, 361; State v. Gosnell, 116 Wis. 606; Sheffield v. Bingham, L. R. 25 Ch. Div. 443; Hill v. Thompson, 16 Jones & S. 481; Moffat v. Henderson, 18 Jones & S. 211; Silkman v. Board, supra; Sweeney v. Bienville, 121 Ala. 454; Sheward v. Citizens, 90 Cal. 635.

The right of the city to require the water to be paid for at the metered rate being established, no question can be made of the right of the water board to enforce the payment of that rate by shutting off the water. The right of the board to shut off the water for failure to pay the water rates is expressly given by the charter. Section 165. That such a right will be upheld, even in the absence of the authority given in the charter, cannot be disputed. The authorities are uniform. Sheward v. Citizens, supra; McGregor v. Case, 80 Minn. 214; Shiras v. Ewing, 48 Kan. 170; Watauga v. Wolfe, 99 Tenn. 429; Hieronymus v. Bienville, 131 Ala. 447; Krumenaker v. Dougherty, 77 N. Y. Supp. 467; Harbison v. Knoxville (Tenn.) 53 S. W. 993; Tacoma v. Tacoma, 3 Wash. 316; Brass v. Rathbone, 153 N. Y. 435; Jones v. Mayor (Tenn.) 72 S. W. 985; City v. Burton, 90 Ga. 486. See also cases cited in American v. State, 46 Neb. 194.

LEWIS, J.[2]

Respondent city acquired title, August 1, 1898, to the water system of the Duluth Gas & Water Company, and has owned and operated it ever since. The present city charter went into effect March 8, 1900, by which there was created a board of water and light commissioners. The board formulated rules and regulations in reference to the use of meters, and for consumers of water in private residences published a flat rate of so much per month, based on the number of bowls, tubs, and closets, and concerning the use of meters rule 6 was adopted, which reads:

> "Meters may be placed upon any water service at the wish of the owner or occupant of the premises, or at the pleasure of the

[2] START, C. J., absent, sick, took no part.

board, and in both cases the board will furnish the meter and set the same at the expense of the consumer, reserving the right to inspect it and remove it for tests or repairs.  Under special circumstances the board may furnish and set meters at its own expense, charging rental therefor.  All persons are forbidden to interfere with or remove a water or gas meter from any service where it has been attached, without first receiving permission from the board."

In September, 1901, the meter in appellants' premises, a private residence, having become out of order, was taken out by the commissioners for the purpose of repair, and at or about that time appellants made application to be furnished water at the then established flat rate, and requested that the meter be not replaced.  The application was denied, and the commissioners insisted upon replacing the meter, when appellants refused to permit its installation, and the city threatened to cut off the water, whereupon this action was commenced for the purpose of restraining and enjoining the commissioners from replacing the meter and from cutting off the water supply, and to require the city to furnish the premises with water at the established flat rate.

The trial court found the facts as stated, and in addition thereto found that rule 6, above quoted, was the only by-law, regulation, or ordinance adopted by the board relative to supplying consumers with water at a flat or meter rate, but that in practice the board permitted any prospective consumer applying for water in the first instance a choice of flat or meter rates, making it a condition, however, that if the meter rate is adopted it cannot thereafter be changed to a flat rate without the consent of the board.  The court also found that the flat rates were made, as nearly as possible, uniform with the meter rates, allowance being made for the greater waste thought to exist when water is taken at a flat rate; that water is furnished to consumers as nearly as may be at the cost thereof to the city, and that water is furnished for sprinkling lawns when consumers are taking under the flat rate at one cent per square yard for the season, but to meter consumers at the regular meter rates; that appellants had about three hundred square yards of lawn requiring water, which respondents furnished during the sprinkling season.  The court also found that prior to Jan-

uary 1, 1901, while appellants were paying for water at meter rates, the amount consumed cost less than they would have paid at the flat rate, but that from January 1 to September 1, 1901, appellants had paid about fifty to fifty-five cents per month more at the meter rate than would have been charged at the then established flat rate. It is also found as a fact that about three-fifths of the families in the city using water paid for it at meter rates, and that in dealing with appellants the board did not treat them differently than other consumers of water similarly situated.

In support of the appeal the following propositions are submitted: That water rates are taxes, and there can be but one method of determining the rates, which must be reasonable and uniform; that appellants had the option of taking water upon either the meter or flat rate basis, and that in refusing them the flat rate system the board discriminated against them and prohibited the use of privileges permitted to other consumers.

1. Water rates are not taxes, within the meaning of those constitutional provisions which require a uniformity of taxation. Section 178 of the city charter provides for a levy of not less than one-half mill, nor more than one-and-a-half mills, on the dollar annually on assessed valuations of the taxable property of the city, to be paid into the treasury to the account of the board of water and light commissioners for the purpose of reducing the water rates to consumers, but this provision has nothing to do with the price to be charged for water by actual consumers. The burden designed by section 178 is assumed by the city upon the theory that it is for the benefit of the people at large to support a municipal water plant. Such a system is to the city's advantage, and of benefit to all property owners and taxpayers. The power conferred by the charter upon the city of Duluth to own and maintain its own water system is in its nature public, because conferred for the public benefit, but in another sense the powers conferred may be considered private, because they are such as may be, and often are, conferred upon private individuals or corporations. See Dillon, Mun. Corp. § 27.

Taxes are the enforced proportional contribution from persons and property levied by the state, by virtue of its sovereignty, for the support of government and for all public needs, and they are therefore properly

subjected to the rule of uniformity. But water rates are imposed and collected merely as the compensation or equivalent to be paid by those who choose to receive and use the water. Water rates are in no sense taxes, but merely the price paid for water as a commodity. The principle of the distinction is very simple. In reference to taxes there is no choice. The burden falls alike upon all property, and should consequently be equal as nearly as may be, but in the case of water rates the relation of the city to the consumer is that of contract. The city has no power to compel any person to buy water, and, for the reasons above stated, the question of the amount of the rates depends not upon the principle of uniformity, or equality between the various consumers, within the principles of taxation. Wagner v. City, 146 Ill. 139, 154, 34 N. E. 545; Silkman v. Board, 152 N. Y. 327, 46 N. E. 612; Jones v. Board, 34 Mich. 273. It follows that a uniform system of rates applicable upon the same basis to all consumers is not within the requirements of the charter.

2. According to the findings of the court it has been the policy of the water commissioners to make the flat and meter rates as nearly equal as possible. The only accurate method for the measurement of water is by meter. Experience shows that consumers paying at the flat rate waste a certain amount of water, which the board take into consideration in fixing those rates, and, according to the evidence, the rates are adjusted from time to time to meet this fact in accordance with the knowledge gained by experience. The city acquired its plant from its predecessor, the Duluth Gas & Water Company, and took the conditions as it found them, and at that time both systems were in effect. In furtherance of the board's purpose to furnish water at the least possible cost to consumers, and at the same time to gradually approach a universal use of the meter system, rule 6 was adopted. The board did not at once require all consumers to use a meter, but rather adopted the practice of requiring those having meters to retain them and pay for the amount of water actually consumed.

The only ground upon which appellants can assail the act of the commissioners in refusing to place them upon the flat rate basis is that it resulted in a discrimination between them and other consumers who pay at flat rates, or that the meter rates were unreasonable; but according to the evidence and the findings, the meter rates were reasonable.

If it appeared that other consumers upon the flat rate system had an advantage and were enjoying a privilege not accorded those using meters, and that the commissioners were arbitrarily making such discrimination, there might be some ground for complaint. But such is not the case. On the contrary, the evidence and findings are to the effect that a large majority of those using meters save money by so doing. The fact that according to appellants' experience with a meter prior to the time it was taken out showed their water bills to be more than according to the flat rate, does not establish discrimination, nor prove that the rate by the meter is unreasonable. It is found by the court that all consumers situated as appellants have been similarly treated, and it does not appear that the method adopted by the board to gradually bring consumers upon the meter basis is illegal or arbitrary, or that it resulted in discrimination. The city, through its board of water commissioners, has a reasonable discretion to accomplish what the charter authorizes. See Parker v. City, 1 Allen, 361; State v. Gosnell, 116 Wis. 606; Sheward v. Citizens, 90 Cal. 635, 27 Pac. 439.

Order affirmed.