STATE ex rel. JOB LATSHAW v. BOARD OF WATER & LIGHT COMMISSIONERS OF CITY OF DULUTH and Another.[1]

September 25, 1908.

Nos. 15,542—(82).

**Public Service Corporation—Rules.**

    Respondents the light and water board of Duluth charged a net cash rate of seventy-five cents per thousand feet for gas furnished when payment was made by a given day, and ninety cents per thousand feet when payment was made afterward. Relator neglected to pay on that day, but subsequently tendered the amount he owed calculated at seventy-five cents per thousand feet. He afterwards tendered a reasonable advance deposit for payment for gas he applied to be furnished with. Respondent refused to accept the deposit until he had paid arrearages calculated at ninety cents per thousand feet and charges for shutting off and turn-

1 Reported in 117 N. W. 827.

ing on the gas. Relator sought by mandamus to compel the board to accept his deposit. The trial court discharged the writ. It is held:

1. Under the city charter the respondent was authorized to adopt a rule to the effect that gas would not be supplied a delinquent person until that person's arrears for gas furnished had been paid.

2. The home rule charter provision authorizing such a regulation had the force and effect of a legislative enactment.

3. A public service corporation, like the respondent, must justly exercise its conferred powers so as to promote the purposes of its creation in the place at which it is to transact business and to render the service for which it is created for a compensatory and not excessive rate impartially determined, and so as not to discriminate improperly between different persons or property or classes of persons or property. The regulations must be reasonable and uniform in principle and operation.

4. The judiciary ought not to interfere with the collection of such rates, established under legislative sanction, unless they are plainly and palpably in violation of law.

5. The regulation here in controversy was valid.

6. The respondent was justified in including in relator's arrearages the gross price for gas, which was found to be reasonable, and incidental charges for severing and making connections.

Proceeding in the district court for St. Louis county, upon relation of Job Latshaw, for a writ of mandamus commanding respondents to accept his tender of $15 as advance payment and to proceed to furnish him gas for his house and to set a meter therein. From a judgment discharging the alternative writ issued and dismissing the proceeding, entered pursuant to the order of Ensign, J., relator appealed. Affirmed.

*Ross & McKnight,* for appellant.

*Coryate S. Wilson* and *E. M. Morgan,* for respondents.

JAGGARD, J.

The relator, a resident of Duluth, was formerly a customer for illuminating gas of the respondents, the water and light department of the city of Duluth. Their net cash rate for gas was seventy-five cents per thousand feet. Their gross rate upon nonpayment on a special date was ninety cents per thousand feet. The service was all metered. The relator, while a customer of the respondent in the autumn and winter of 1904–1905, neglected to pay his monthly gas bills by the time fixed, and when respondents then required him to pay

at the gross rate of ninety cents per thousand feet he refused so to do, on the ground that the penalty was excessive and unreasonable. Thereupon respondents shut off his gas. At various times, before and after the shutting off of the gas, relator tendered to respondent the sum due for gas figured at the net cash rate of seventy-five cents per thousand feet. These tenders were all refused. Finally on May 29, 1906, relator executed to respondents a due and formal application for gas, and accompanied it by a tender of $15 as advance deposit or payment in advance for the gas for which he was applying. This tender respondents rejected, unless he would first pay up all his arrears in amount as claimed by them. This included the penalty of fifteen cents per thousand feet, and additional charges for shutting off and reconnecting the gas. Side charges were not required to be paid by ordinary customers applying for gas, even without payment in advance. Thereupon relator sued out this mandamus, commanding respondents to accept his tender of $15 as advance payment and to proceed to furnish him gas till it should be exhausted. The trial court discharged the writ. From judgment entered in favor of respondents, this appeal is brought.

1. Relator contends that under the Duluth charter the board may by regulation refuse to supply delinquent patrons until all arrears on the premises have been paid, but that their regulation in fact was that they would not supply any delinquent person until that person's arrears had been paid. The regulation in issue so provided. Section 176 of the charter, however, expressly authorizes the commissioners "to regulate the use of the service furnished by any such plant; to fix the price and rates therefor; to require payment in advance therefor and to enforce the same by depriving any party, who refuses to make payment therefor of any such public service until such payment is made." It also confers general authority on the commissioners "to make and enforce such by-laws, regulations and ordinances as may be necessary to carry into effect said powers or the object and intent of this chapter in regard to any such public service; * * * and to provide for other rules for the proper officers and employees for the discharge and regulation of such services. * * *" The city, through its board of commissioners, has a reasonable discretion to accomplish the intent the charter authorized. Powell v. City o

Duluth, 91 Minn. 53, 97 N. W. 450.    The conclusion follows that the immediate rule conforms to the authority conferred by the charter.

2. Charter provisions, which by their terms authorize the conditioning of supply to a consumer at the premises at which the debt was incurred upon the payment of the debts for gas previously. furnished and consumed, have the force and effect of legislative enactments. Kansas City v. Marsh, 140 Mo. 458, 471, 41 S. W. 943; Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1133 (which involved a home rule charter); City of East Grand Forks v. Luck, 97 Minn. 373, 107 N. W. 393, 6 L. R. A. (N. S.) 198; Turner v. Snyder, 101 Minn. 481, 112 N. W. 868; American Electric Co. v. City of Waseca, 102 Minn. 329, 113 N. W. 899; Peterson v. City of Red Wing, 101 Minn. 62, 111 N. W. 840; Howe v. City, 70 N. J. Eq. 648, 62 Atl. 777. It is not material in the present case whether the duty imposed on the patron proceeds upon the theory of an implied contract (City of East Grand Forks v. Luck, supra), or of a duty prescribed by a rule authorized by statute.

3. The regulation here in issue was valid and enforceable.    The relator is precluded by statute from raising any controversy as to its mere variance from rules applicable to cases where no such authority existed.    In the absence of statute, common-law rules apply.    They are not, however, immutable.    Within limits they may be changed by legislative act; that the constitution provides that home rule charters must be "in harmony with and subject to the constitution and laws of the state of Minnesota"; and that "laws" includes the common law, as well as statutes does not result in legislative paralysis.    Force and effect must be given to valid legislative action.    See Brooklyn v. City, 188 N. Y. 334, 81 N. E. 141, 117 Am. St. 868.    If, however, a statute or a regulation contravene constitutional provisions, its invalidity follows.

It is elementary that a municipal light and water board must justly exercise its conferred powers in the making and enforcing of regulations so as to promote the purpose of its creation in the place at which it is to transact business, and to render the public and its patrons the contemplated service for compensatory, but not excessive, rates, impartially determined, and so as not to improperly discriminate between different persons or property, or different classes of persons

or property. The regulations must on principle and in operation be reasonable and uniform.

This court has recently had occasion to hold void certain regulations because they failed to conform to this standard. Gordon & Ferguson v. Doran, 100 Minn. 343, 111 N. W. 272, 8 L. R. A. (N. S.) 1049. It does not at all follow that "the fundamental law of public service enterprises—the duty to serve all on tender of payment" —is universal in its application or persists despite certain express statutory provisions to the contrary. Indeed, the general principle is that the judiciary ought not to interfere with the means of collection of rates established under legislative sanction, unless they are plainly and palpably in violation of law. San Diego Land & Town Co. v. National City, 174 U. S. 739, 740, 19 Sup. Ct. 804, 43 L. Ed. 1154. Both on reason and authority the method of collection here in issue was reasonable and proper. With unusual unanimity, such regulations have been sustained alike where there is statutory authority and where there is not. Our attention has not been called to any case in which a rule like the one at bar, authorized by statute, has been held void.

In a case involving an exactly similar state of facts (Jones v. Nashville, 109 Tenn. 550, 72 S. W. 985), Shields, J., in sustaining the regulation, said: "The ordinance contributes to the economical and prompt collection of the water assessments, and is almost necessary for that purpose, as, without it, not only would the city be delayed in the collection of the assessments, but would be put to the expense of a multitude of petty suits annoying to it and harassing to its inhabitants, and would suffer great loss on account of insolvencies. * * * We see nothing harsh and oppressive or discriminating in this ordinance, but we are of the opinion that it is reasonable and valid, and that its enforcement against the plaintiff furnishes her no legal cause of complaint against the defendant." And see Mackin v. Portland, 38 Ore. 120, 61 Pac. 134, 62 Pac. 20, 49 L. R. A. 596; Tacoma v. Tacoma, 3 Wash. St. 316, 28 Pac. 516, 14 L. R. A. 669, 28 Am. St. 35; Montreal v. Cadieux [1899] App. Cas. 589; Com. v. Philadelphia, 132 Pa. St. 288, 19 Atl. 136; People v. Manhattan, 45 Barb. 136; City v. Burton, 90 Ga. 486, 16 S. E. 214; Detroit v. Moreton, 111 Mich. 401, 69 N. W. 659; Brass v. Rathbone, 153 N. Y. 435

439, 441, 47 N. E. 905; City of East Grand Forks v. Luck, supra; Mackin v. Portland, supra.

Many of the cases upon which defendant relies have been repeatedly distinguished. It was pointed out in Jones v. Nashville, supra, that in Crumley v. Watauga, 99 Tenn. 420, 41 S. W. 1058, the water company had accepted a duebill from a delinquent customer and afterwards allowed him to receive and pay for water. It was denied the right to subsequently coerce him by denying him a present legal right to buy water. The same distinction applies to Wood v. City, 87 Me. 287, 32 Atl. 906, 29 L. R. A. 376. See Mackin v. Portland, supra; Jones v. Nashville, supra. In Turner v. Revere, 171 Mass. 329, 50 N. E. 634, 40 L. R. A. 657, 68 Am. St. 432, it was essentially conceded that such power to shut off water might have been specifically conferred by statute upon the municipality. See City of East Grand Forks v. Luck, supra. Gaslight v. Colliday, 25 Md. 1, and Lloyd v. Washington, 1 Mackey (D. C.) 331, involved rules held improper because of the construction of the contract. See Mackin v. Portland, supra. In New Orleans v. Paulding, 12 Rob. (La.) 378, there was no ordinance or statute justifying the refusal to supply because of indebtedness of the former tenant.

Nor is the view of the law here accepted inconsistent with cases involving service by telephone and telegraph companies and common carriers to which relator refers us. Thus it has been held that a telephone company operating a messenger service cannot forbid its subscribers from telephoning for messengers of a competing company. People v. Hudson, 19 Abb. N. C. (N. Y.) 466. Nor can such company refuse to put a telephone in an office because public toll booths were available. State v. Nebraska, 17 Neb. 126. So a common carrier cannot refuse to receive freight because of nonpayment of back charges for other shipments. Eastern v. Holbrook, 4 Ky. Law 730; Hutchinson, Carriers (3d Ed.) § 865. It may also be conceded as a general principle—although it is not strictly here involved—that a city, in supplying its citizens with gas or water, acts not by virtue of its sovereignty, but performs the function of a private corporation. None the less its situation, under present legislation, is not identical with that of telephone companies or common carriers. The statute

contemplates that its rules should be adapted to the circumstances sur-
rounding a particular public calling. It has a right to carry into
effect the powers granted by statute, and general principles govern-
ing all public service corporations must be varied in details when ap-
plied to particular classes of cases. They should be adapted to the
locality and to the peculiar affairs which it is intended they should
control and affect. See Jones v. Nashville, 109 Tenn. 550, 72 S. W
985. The cases in question fail to control, because of essential and
proper differences in statutory provisions and in regulations which
they authorize. See Mackin v. Portland, supra.

4. The imposition of a fifteen-cent penalty or discount and of certain
costs and expenses of shutting off the gas and turning it on as parts
of the arrearage charged relator does not entitle relator to the man
damus he seeks. The trial court in effect found that the total charge
of ninety cents per thousand feet was a reasonable price and rate
for gas consumed by the relator. He was charged at that rate. A
discount of ten or fifteen per cent. on the gross price was shown to
be current. The legality of such a penalty or discount was sustained
in Com. v. Philadelphia, supra. And see Girard v. City, 88 Pa. St
393; Tacoma v. Tacoma, supra. The costs and expenses charged
were found to have been reasonable in extent.

The requirement of such charges did not render the regulation void
because of want of uniformity in operation. They were reasonabl
incident to the right to collect arrearages in rent. True, they wer
not charged against persons who had paid their bills. Neither wer
prior debts. The delinquent patron was reasonably required to bea
the abnormal expense he had caused. The burden operated uniforml
upon all delinquents, just as patrons who do not pay by a given tim
are required to pay larger prices. All persons similarly situated wer
similarly treated. The validity of the regulation is not successfull
impeached by these considerations. State v. Sedalia, 34 Mo. Ap
501; Powell v. City of Duluth, supra; San Diego Land & Town C
v. National City, supra. And see American v. State, 46 Neb. 19
64 N. W. 711, 30 L. R. A. 447, 50 Am. St. 610.

The conclusion follows that the relator is not entitled to mandamu
The question has been considered on its merits. It is therefore u

necessary to consider or determine whether under any circumstances a mandamus would lie.  See 26 Cyc. 151, 154; Mackin **v.** Portland, supra; Howe v. City, supra.

Affirmed.