## J. C. HORNER v. OXFORD WATER & ELECTRIC COMPANY.

(Filed 7 December, 1910.)

1. **Corporations—Electricity—Public Service—Municipal Control— Authorized Maximum Rates—Power of Courts.**

   A public-service electric company operated in a town is subject ·to reasonable regulation and control for the public benefit by the municipal public agencies properly designated, with the power in the municipality to fix upon a maximum reasonable indiscriminative charge between citizens receiving the same kind and degree of service, having due regard to the reasonable profits of the electric company; and in the absence of specific legislative regulation the rates may, under some circumstances, be made the subject of judicial scrutiny and control.

2. **Same—Ordinance—Alternate Powers—Option.**

   When a valid and accepted ordinance of a municipality authorizes a public-service electric company to make a certain maximum charge for furnishing electricity to its citizens by meter rate and a certain maximum charge by flat rate, the accepted ordinance being the contract under which the complaining citizen alleges his right to change from a meter rate to a flat rate, the right being granted to the defendant in the alternative, gives to the electric company the option to furnish at a reasonable charge electricity to the citizen upon either the flat or meter basis.

3. **Corporations — Public Service — Ordinance — Acceptance — Contracts—Maximum Rates—Parol Evidence.**

   When a citizen bases his cause of action upon the right to demand of a public-service electrical corporation that it furnish him electricity upon a flat-rate basis and the company claims the right to furnish him with it upon either a flat rate or a meter basis, under the terms of an accepted municipal ordinance, regarded as a contract, which by a construction of its terms makes it optional with the company, it cannot be shown by parol evidence in contradiction of the ordinance that the lessor of the defendant had orally agreed that the option should be with the plaintiff.

4. **Corporations—Public Service—Maximum Rates—Reasonableness —Discrimination—Evidence.**

   In the present case it appeared that the defendant electric company furnished the plaintiff electricity in accordance with a reasonable and fair meter rate basis correctly measured; that the company, with a desire to benefit the public, had changed from a twelve to a twenty-four hour service and had ceased to supply electricity upon a flat-rate basis; that an accepted ordi-

nance of the town authorized the company to make a maximum charge either upon a flat or meter rate; and that plaintiff, a large consumer of electricity, demanded to have it furnished upon a flat-rate basis and brought his action to that effect and to restrain the defendant from cutting off, as threatened, the electricity for his lights. *Held,* no evidence of discrimination against the plaintiff; and as under the ordinance the defendant was given the option to supply the current of electricity upon either basis, and as it was making plaintiff a proper charge for electricity for the amount actually used by him, the restraining order was properly dissolved.

APPEAL from *Lyon, J.,* at the August Term, 1910. of GRANVILLE.

Civil action, heard on exceptions to report of referee. The action was instituted by plaintiff, head and proprietor of a prominent and successful boarding school for boys, to restrain defendant company from shutting off the current of electricity supplying lights for said school. The matter in dispute was referred, by order of court, and on the hearing before the referee it was made to appear that defendant company, as assignee of one Millner, was engaged in operating an electric plant and supplying lights for the citizens of Oxford under an ordinance which had been duly ratified by a vote of the electors of the town, and in which it was, among other things, provided, in sec. 6: "That said H. L. Millner, his successors and assigns, may charge and collect the following maximum rates for light and power furnished by them," and further, that the flat rates may be collected monthly and quarterly, in advance, and the metered rates monthly, after service. Then followed specifications for light for flat rates, making a difference betweeen the charges for domestic and commercial purposes and also maximum rates for meter charges.; that shortly after the performance of the contract was entered on, plaintiff having had his house wired and proper appliances installed, entered into a contract, obtaining electricity at the meter rate, and same was furnished and used for some time at meter rate; that plaintiff having become dissatisfied with the charges made against him, chiefly by reason of alleged irregularities as to amount, notified the company that he would no longer accept lights at the meter rate and tendered the amount

due for schedule for flat rates. Defendant declined to enter into this arrangement and threatened to shut off the light supplied the school unless the charges for meter rate were paid according to the contract stipulations. The reason for this refusal is set forth in a separate finding, as follows: "In reply to said statement, said Robert Foster Carbutt, superintendent of Oxford Water and Electric Company, informed plaintiff that "We could not give him a flat rate running twenty-four hours, and that we wanted to keep up the twenty-four hour service and it would be impossible for us to give flat rates under continuous service," it appearing that when the ordinance was passed and service entered on, electricity was only supplied for twelve hours.

It appeared further in evidence, on the part of plaintiff, that prior to the notice given by plaintiff the charges per month were very irregular and had greatly increased in amount without just or satisfactory reason. Defendant offered evidence tending to show that the first meter put in was inaccurate, but that this meter had soon been taken out and a new and correct meter installed; that all charges in difference affecting this litigation were estimated by the correct meter.

Second. That the amount of electricity consumed at the school was increased by reason of the larger number of students and the greater number of hours lights were kept burning. There was further testimony offered and set out in case on appeal as follows: "It was in evidence on the part of defendant that the first meter which was installed and which was taken out in May, 1907, ran too slow. It was also in evidence on the part of the defendant that the meter which was installed in September, 1907, and which has remained there ever since, was correct.

It was also in evidence that since May, 1907, no flat rate contract has been made, and that since June, 1908, no one has been furnished with electric lights except by meter rates, but that before this action was commenced the defendant was furnishing the hotel and other private parties at flat rates. There was evidence that it would bankrupt the company to be compelled to furnish all of its customers at flat rates. There was evidence that no company in North Carolina now furnishes electricity by flat rates, and that the meter rate is the only fair and equitable

method of furnishing electricity, and that it has been generally adopted all over the country. It further appeared in evidence that the plaintiff was burning his lights on an average of from three to five hours a night (Mr. Horner testified, three and one-half hours on an average during the nine months' school), while an ordinary dwelling house burned its lights on an average from one-half to three-quarters of an hour each, per night."

It was found by the referee that the .charge against plaintiff was occording to specifications of the ordinance as to meter rates and was a reasonable charge for electricity consumed. The referee held that under the franchise the plaintiff had the right at his election to change from the meter to the flat rate, and that the charge should be estimated against plaintiff as for commercial purposes, and that the injunction should be made perpetual forbidding defendant from shutting off light for non-payment of the meter rate. On the hearing before the lower court the ruling was reversed as to the right of plaintiff to make the change, the court holding that defendant company had the option to charge its patrons either for flat or meter rates, and entered judgment that the injunction be dissolved, and plaintiff excepted and appealed.

*Graham & Devin* and *B. S. Royster* for plaintiff.
*John W. Hinsdale* for defendant.

HOKE, J. We are of opinion that the judge below has correctly construed the contract or ordinance and that the rights of the parties thereunder have been properly determined. The defendant company having dedicated its property to the public service, it thereby became the subject of reasonable regulation and control for the public benefit and by the public agencies properly designated for the purpose. Subject to this principle the municipal corporation had the power to fix upon a maximum charge reasonable in its terms and which defendant would have no right to disregard. Even with such maximum rates properly established, our decisions are to the effect that the charges must be reasonable and without discriminations as between citizens receiving the same kind and degree of service, and that in the absence of more specific legislative regulation the rates may

under some circumstances be made the subject of judicial scru-
tiny and control. *Griffin v. Water Co.,* 122 N. C., p. 206; *Rush-
ville v. Gas Co.,* 132 Ind., 5. It is shown that the charge made
against plaintiff in this instance according to meter rates is
reasonable. So far as appears then from the findings of fact or
the proof the ordinance is a valid regulation fixing the maximum
rates stated and requiring defendant company to supply elec-
tricity within the rate to all persons living within the corporation
who should apply for it, but we agree with his Honor in holding
that as to the method of rating, the said ordinance not improp-
erly left and referred this question to be determined by the con-
tract of the parties. This not only appears from a perusal of
the ordinance by which "H. L. Millner, his successors and
assigns, are authorized to charge and collect the following maxi-
mum rates for light and power furnished by them, etc., specify-
ing the flat and meter rates," but in so far as the ordinance ex-
presses a contract between the company and the municipality,
and both parties to this controversy seem to have so treated it,
the same is subject to the principle of interpretation generally
applicable, "That when a promise is in the alternative, as to do
a thing one way or another, the right of election is with the
promiser in the absence of an express provision to the contrary."
7 A. & E. (2 Ed.), p. 125; *Holmesly v. Elias & Cohen,* 75 N. C.,
p. 573; *Exchange and Building Co.,* 90 Va., p. 83; *Powell v.
City of Duluth,* 91 Minn., p. 53; Paige on Contracts, sec. 1391;
1 Farnham Water and Water Rights, sec. 163. We find no
evidence in the record supporting the suggestion made that de-
fendant's assignor, as an inducement, had given assurance that
he would furnish electricity according to the method of rating
selected by the householder or purchaser, and if there had been,
it should not in our opinion be allowed to affect the plain and
explicit terms of the ordinance. Nor do we think that the action
of the company should be held to discriminate unjustly against
the plaintiff in view of the facts in evidence; that the charge
made against the plaintiff is a fair and reasonable charge for
the electricity actually consumed and correctly measured; that
the company is endeavoring to furnish a full service of twenty-
four hours, a change made from the original method of half time

with the desire and intent to benefit the entire public, and that the flat rate originally provided for under this measure of service would speedily bankrupt the company; that no flat rate contract had been made since May, 1907, and since June, 1908, no one had been furnished electricity except by meter rates. In *Powell v. City of Duluth, supra,* on facts not dissimilar to those presented here, the Court said: "The only ground upon which appellants can assail the act of the commissioners in refusing to place them upon the flat rate basis is that it resulted in a discrimination between them and other consumers who pay at flat rates or that the meter rates were unreasonable; but according to the evidence and the findings, the meter rates were reasonable. If it appeared that other consumers, upon the flat rate system, had an advantage and were enjoying a privilege not accorded those using meters, and that the commissioners were arbitrarily making such discrimination, there might be some ground for complaint. But such is not the case. On the contrary, the evidence and findings are to the effect that a large majority of those using meters save money by so doing. The fact that according to appellant's experience with a meter prior to the time it was taken out showed their water bills to be more than the flat rate, does not establish discrimination, nor prove that the rate by the meter is unreasonable. It is found by the court that all consumers situated as appellants have been similarly treated, and it does not appear that the method adopted by the board to gradually bring consumers upon the meter basis is illegal or arbitrary, or that it resulted in discrimination."

Upholding as we do the decision of the judge below that under the ordinance and the facts in evidence, the plaintiff may be lawfully subjected to the meter rate, we further concur in the position of his Honor that the question whether plaintiff could be charged under the flat rate as domestic or commercial, is no longer material, and for that reason is not considered or passed upon.

We are of opinion that there was no error in dissolving the injunction, and the judgment to that effect is

Affirmed.

CLARK, C. J., dissenting: The commissioners of Oxford made a contract with the defendant company to furnish water and lights to said town and its citizens. The contract was in the shape of an ordinance which was submitted to the voters at the ballot box and approved by them. This ordinance specified the rates, both flat and meter, in separate columns, at which the defendant should furnish both light and water. This table of rates was not intended to confer any option upon the defendant, but was a restriction upon the defendant company and a guarantee to the town and the citizens that they would be furnished lights and water at prices not exceeding those rates, and by the flat or meter system at the option of the consumer.

The ordinance and the table were not required to confer any option upon the defendant. Without them, the company had full choice whether it would furnish upon a light or flat meter' rate, and as to the price it would charge. It was not to confer an option upon the company, but for the exactly opposite purpose of restricting the powers of a monopoly, and to confer upon the consumer the option that the ordinance was adopted.

This will more clearly appear by reference to the provision as to the water rate, which specifically provides that upon the expiration of any contract with a citizen as to the furnishing of water upon a flat rate, the company should have the right to substitute a meter rate. There is no provision reserving such right to the company to substitute a meter rate for a flat rate in furnishing lights.

It is true that the flat rate for lights was based upon a twelve-hour service. Of course, the plaintiff cannot require a longer service upon a flat rate than that which existed at the date of the adoption of the ordinance, and it seems that the plaintiff does not claim it. In my judgment, the Court below should have adopted in all respects the report of Gov. Stedman, the very careful and able referee in this case.