## COX v. ABBEVILLE FURNITURE FACTORY.

1. WATER SUPPLY TO PRIVATE CORPORATION IN CITY OF ABBEVILLE.—The agreement made by the Abbeville Electric Light and Power Co. with the Board of Commissioners of Public Works, "to pump and supply water to the city of Abbeville for the purpose of extinguishing fire free of charge," does not impose the obligation to furnish free of charge water for a special private system of fire protection instituted by a private corporation on its own premises and connected with the city mains for the special security of its own property over and above the protection undertaken by the municipality for the benefit of the public, and in the absence of an agreement fixing liability the corporation is liable for reasonable compensation for the protection, whether it used the water or not. Under the said agreement the rate of compensation was to be fixed by said board, but the powers of the board having been vested in the city council, it has the power to fix a rate.

2. IBID.—The terms "minimum charge" in water supply contracts where the meter system obtains usually signifies a rate of compensation

for the expense and labor incident to being ready to supply water, though none be used. Here the minimum charge was to be paid for protection. Amount to be paid in case of fire was left open.

Before Memminger, J., Abbeville, September, 1905. Modified.

In the matter of claim presented by Water, Light and Power Co. against Abbeville Furniture Co. in case of R. E. Cox *v.* Abbeville Furniture Co. From Circuit judgment, claimant appeals.

*Mr. Wm. N. Graydon,* for appellant, cites: *What makes a contract:* 1 Addison on Con., sec. 30; 3 Id., sec. 1399; 15 Ency., 2 ed., 1078; 9 Cyc., 308, 242, 243; 29 Pa. St., 465.

*Mr. Frank B. Gary,* contra, cites: *Contract may be made by parties themselves or by others for them:* 5 Ency., 1078.

August 9, 1906. The opinion of the Court was delivered by

Mr. Justice Woods. In this action, brought by R. E. Cox, a stockholder and creditor of the Abbeville Furniture Co., a receiver of the corporation was appointed and L. W. Perrin, Esq., master, was directed to take testimony and report on the validity of claims. The Water, Light and Power Co. presented the following account:

To five hundred sprinklers, from November the 1st,
    1902, to September the 1st, 1904, at fifteen cents
    per annum each ..............................$137 50
To four hydrants, from November the 1st, 1902, to
    September the 1st, 1904, at $40 per annum........ 293 30
To water, boiler use, washing out, etc., for two
    years, at $2.50 per month........................ 60 00
To water meter rate, drinking water, 2,880 cu. feet,
    at 20 cents per M................................ 4 32
To 2 doz. 16 C. P. Lamps, each 25 cts............. 6 00
                                           ———

Aggregating ..............................$501 12

4—75

The last two items of the account were admitted to be correct. The appeal involves the first two items, which were rejected by the master and the Circuit Court.

The questions are (1) was the Abbeville Furniture Co. entitled to the fire protection offered by the hydrants and sprinklers at the hands of the water company free of charge; and (2) if it was not, what rate of compensation would be allowed?

There is no dispute as to the material facts. The city of Abbeville owned municipal water works, which were managed by a Board of Commissioners of Public Works. On September the 1st, 1900, a contract was made between the Board of Commissioners of Public Works, called the party of the first part, and Abbeville Electric Light and Power Co., called the party of the second part, which contained among other things the following stipulations: "That the party of the first part, in consideration of stipulations hereinafter stated, agrees to employ the party of the second part to operate the water works plant of the city of Abbevile for the party of the first part, *and under its full control and management* and the party of the first part agrees to compensate the party of the second part for such services in the *amount and manner* hereinafter stated. That the party of the first part hereby appoints the party of the second part its agent to collect the rents of the said water works plant, which the party of the second part agrees to collect as such agent, and *the same to receive as full compensation for all the services set forth herein*, it being agreed that the party of the first part shall not be liable to the party of the second part for the non-collecting and non-payment of the same or any part thereof. And the said party of the second part agrees to pump and supply the water to the *city of Abbeville for the purposes of extinguishing fire,* for the two public watering places on the public square of the said city, for sprinkling said public square, and for flushing purposes, *free of charge to the party of the first part,* for which said party of the second part shall receive as compensation whatever

amounts may be collected from private consumers at the maximum rate of twenty cents per thousand gallons, where the meter system is in force, and where it is not in force, such sums as may be collected from private consumers *at a reasonable rate to be fixed by the party of the first part,* provided that in no case shall any consumer of water pay less than twenty-five cents per month for the use of the water from said plant."

The Water, Light and Power Co. succeeded to all the rights and liabilities of the Abbeville Electric Light and Power Co. under this contract. The portions of these stipulations of the contract which we have italicized make the meaning plain that the Abbeville Electric Light and Power Co. was to operate the plant as agent of the Board of Commissioners of Public Works and under the general control of that board and that water was to be supplied to the city of Abbeville for extinguishing fire free of charge; but it is equally manifest that for all private use of the water supply the company was to receive pay as compensation for its expense and labor, and this private use, for which they were entitled to charge, included fire protection furnished specially to private parties outside of the general municipal enterprise, to the benefit of which all citizens were entitled in common.

The City Council carried the water pipe to the south side of the railroad, where the furniture factory was located, but it had no streets or even rights of way on that side of the railroad. The hydrants, while furnished by the city, were put up by the furniture factory entirely on their own land for the sole purpose of supplying water for its private uses, one of which was keeping sufficient pressure on the automatic sprinklers placed by them inside the factory to extinguish fire there. Nothing in the evidence indicates any control or supervision of the hydrants or sprinklers by the municipal authorities; nor is there anything from which the inference could be drawn that the City Council or the Board of Commissioners of Public Works contracted with the furniture company to furnish it special fire protection free of

charge or that such special and peculiar advantage at the public charge was ever contemplated.  On the contrary, both the Board of Commissioners of Public Works and the City Council have clearly said that free service of this kind was not contemplated.

The system of hydrants and sprinklers installed by the furniture factory which its officers regarded necessary to the economical management of their particular business manifestly differed in kind and degree from the fire protection offered by the ordinary hydrants installed by the city authorities as a part of a municipal system of fire protection. It seems quite clear, therefore, that the agreement made by the Abbeville Electric Light and Power Co. with the Board of Commissioners of Public Works "to pump and supply the water to the city of Abbeville for the purpose of extinguishing fire free of charge" did not impose the obligation to furnish free of charge water for a special private system of fire protection installed by this private corporation on its own premises for the special security of its own property over and above the protection undertaken by the municipality for the benefit of the municipal public.

The extension by the city of the water mains across the railroad to the vicinity of the furniture factory implied such consent to any legitimate use of the water as to relieve the furniture factory from the charge of committing a tort in making the connection and using the water; but, on the other hand, in making the connection and availing itself of the special fire protection it needed for its private business, the furniture factory, in the view of the law, must have imputed to it a promise to pay the reasonable value of the protection it thereby obtained.  The benefit received was not incidental, but it was the result of a direct appropriation by the furniture factory of power and water, which was the property of another, as a standing guard over its property against the peril of destruction by fire.  Connection with a light or water plant accompanied by the asserted right of using it and the means of exercising the right is a benefit enjoyed at

the hands of another imposing an obligation to make reasonable compensation, although the occasion for actual use never arises. Here there was not only the connection, the asserted right to use it and the means of exercising the right affording continual protection against fire, but there was a positive saving of insurance bestowed upon the furniture factory by the water company.

The fact that there was no use, no actual consumption of water, is a factor to be considered in estimating what should be the amount of the compensation, but it does not relieve the furniture factory from liability for the fire protection furnished at the expense and labor of the Water, Light and Power Co. If one has his goods transported from one place to another by a common carrier without any contract with the carrier, or even the knowledge of its agents, his liability for reasonable compensation for the service would not be doubted, though it could not be shown that the transportation required any additional effort or expense on the part of the carrier or caused it to lose the carriage of other goods. For these reasons we think the referee and the Circuit Judge erred in denying the Water, Light and Power Co. compensation for the fire protection.

The next question is as to the measure of compensation. The contract provided that private consumers should pay a reasonable rate to be fixed by the Board of Commissioners of Public Works. This board decided that compensation should be made in this instance, but before fixing the rate it ceased to exist, and its powers were vested by statute in the City Council, which affirmed the contract made with the Abbeville Electric Light and Power Co. Thus it was placed in the power of the City Council to fix the rate in the stead of the Board of Commisisoners of Public Works. Accordingly on October the 11th, 1904, the City Council passed the following resolution:

"After discussion of water rates for furniture factory and Abbeville warehouse, council decided that furniture factory pay a minimum charge of $25 and Abbeville Ware-

house Co. a minimum charge of $10 per year, in lieu of putting in meters. In case meters are installed, the regular charges to apply."

The matter had been in controversy for some time, and it is clear the rate mentioned was intended to govern past as well as future charges. The term "minimum charge" in such matters is more appropriately applied where the meter system obtains, and usually signifies a rate of compensation for the expense and labor of being ready to supply water or electricity or gas, at the will of the customer, even though the supply be not used at all. Its meaning is not quite so obvious when meters are not used, but in this instance the intention of the Council is sufficiently clear that the furniture factory should pay $25 per annum for its fire protection, which was the matter in controversy, even though it consumed no water for extinguishing fires; the question of the compensation for water that might be actually used being left open for consideration in case a fire occurred.

The judgment of this Court is, that the judgment of the Circuit Court be modified by adding to the amount allowed on the claim of the Water, Light and Power Co. twenty-five dollars per annum from November 1, 1902, to September 1, 1904.