GORDON & FERGUSON v. MICHAEL DORAN and Others.[1]

March 15, 1907.

Nos. 15,034—(158).

**Review on Appeal.**

Especially in cases involving public or semipublic questions, current appellate practice construes liberally what matters are presented for adjudication, and inclines to finally determine the merits of a controversy, rather than, upon mere formal or technical issues, to send the case back to the trial court for obvious, and not apparently useful, amendment.

**Rules of Water Board Void.**

Rules of a water board, giving credit for water consumed through small pipes supplied with meters upon charges for unmetered connections of a building using an automatic sprinkling device with water mains, *held* discriminatory and void, because lacking uniformity in principle and in operation.

**Charge for Automatic Sprinkling Connection.**

A property owner, who has installed such a system and connected it at his own expense with the water mains, although he may not take away water except in case of fire, enjoys a beneficial use of water not common to the public in general. The water board is entitled to make a reasonable and impartial charge for the pecuniarily valuable and special privilege conferred.

**Cutting off Connection—Injunction.**

The water board will not be permitted to enforce illegal rates by severing the connection of such a sprinkling device. Courts will interfere by injunction or otherwise to protect the public and individuals entitled to water service against unreasonable charges or discriminations made by public utility corporations or bodies.

[1] Reported in 111 N. W. 272.

**Order Affirmed.**

The order of the trial court granting an injunction against the defendants from the severance of the connection of water mains with such a system in this case is affirmed.

Appeal by defendants, as the board of water commissioners of the city of St. Paul, from a judgment of the district court for Ramsey county entered pursuant to the findings and order of Brill, J. Affirmed.

*James C. Michael* and *Louis R. Frankel,* for appellants.

*Young & Lightner,* for respondent.

A municipality which supplies its inhabitants with water does so in the capacity of a private corporation, and not in the exercise of the power of local sovereignty. 30 Am. & Eng. Enc. (2d Ed.) 404; 1 Dillon, Mun. Corp. §§ 27, 66–68, and cases; Wagner v. City, 146 Ill. 139; Appeal of Brumm, 12 Atl. (Pa.) 855; Bailey v. Mayor, 3 Hill, 531; Girard v. City, 88 Pa. St. 394; Western v. City, 31 Pa. St. 175; cases cited by Mr. Justice Elliott in City of East Grand Forks v. Luck, 97 Minn. 373.

Water companies are engaged in a business "affected with a public interest." They are classed as quasi-public corporations, and are subject in their operation to the limitations and control which the law imposes on such bodies, in order that the public interest may not suffer. State Trust Co. v. City of Duluth, 70 Minn. 257, 263; 30 Am. & Eng. Enc. (2d Ed.) 403, and cases cited; Spring Valley Waterworks v. Schottler, 110 U. S. 347; Munn v. Illinois, 94 U. S. 113; 1 Dillon, Mun. Corp. § 52, note; State v. Nebraska, 17 Neb. 126.

The same rule applies as to water rates. Such rates are nothing more than the price paid for water as a commodity. 30 Am. & Eng. Enc. (2d Ed.) 422; Powell v. City of Duluth, 91 Minn. 53. It is true that water rates are in no sense taxes, and are not therefore governed by the constitutional provisions of equality and uniformity of taxes. Powell v. City of Duluth, supra. A municipality or water company, however, is required, in fixing rates as they relate to a business affected with a public interest, to make such rates reasonable, fair and such as yield reasonable compensation. 30 Am. & Eng. Enc. (2d Ed.) 418,

422, 424–426, and cases cited. This rule was recognized by our supreme court in the case of Powell v. City of Duluth, supra.

The authorities are uniform that the municipality must furnish water to all similarly situated without discrimination, and at rates which are reasonable and compensatory. Wagner v. City, supra; San Diego L. & T. Co. v. City of National City, 174 U. S. 739, 757; State v. Gosnell, 116 Wis. 606; Sheward v. Citizens, 90 Cal. 635; Red Star v. Jersey City, 45 N. J. L. 246; Turner v. Revere, 171 Mass. 329; Shepard v. Milwaukee, 6 Wis. 539; State v. Butte City, 18 Mont. 199; Haugen v. Albina, 21 Ore. 411; Rockland v. Adams, 84 Me. 472; Crumley v. Watauga, 99 Tenn. 424; City v. Bienville, 130 Ala. 379; American v. State, 46 Neb. 194; Griffin v. Goldsboro, 122 N. C. 206; Weimer v. Louisville Water Co., 130 Fed. 251; 1 Dillon Mun. Corp. §§ 320–322; Spring Valley v. City, 82 Cal. 286; 27 Am. Law Reg. (2d Series) 277; Kennebec v. City, 97 Me. 185; Moore v. City of St. Paul, 48 Minn. 331.

## JAGGARD, J.

The petitioner and respondent established in its large building, used for wholesaling merchandise, an automatic sprinkling system, connected at its own expense with the water mains of defendants and appellants, the board of water commissioners of the city of St. Paul. At the top of the building was a tank filled with water, which maintained a pressure through the pipes in the building equal to the pressure in the mains. When the temperature at any place in the building would rise sufficiently to melt the metal coverings over small holes in the pipes of the sprinkling device, water escaped, the pressure in the pipes would be reduced, and water would flow in from the city mains automatically through a valve. When the apertures of the pipes were closed no city water from the mains was consumed, except incidentally to fill the tank from the general service pipes in the building when they were not otherwise filled as from wells on the premises. The sprinkling connections were not metered, because the use of meters would deprive the owner of the building of great reduction in insurance otherwise obtainable. The amount of water consumed by smaller pipe connections for general purposes having no connection with the sprinkling system was measured by meters.

In 1905 defendants adopted, among other rules, the following, which are the only ones affecting this controversy: Rule 22 prescribed charges for premises using automatic sprinkling systems exclusive of hydrant charges, proportioned to the size of mains installed. Rule 23 fixed the rental of private fire hydrant service. Rule 24, which is the one upon the construction of which in particular the decision of this case rests, was as follows:

> In all cases where charges for water actually furnished by the board of water commissioners by means of meter rates shall exceed the sum due to the board of water commissioners on account of service furnished for automatic sprinkling systems, hydrants or large services, then the proper officers of the board are authorized to remit, and there shall be remitted, to any such consumer all charges due to said board of water commissioners on account of service furnished for automatic sprinkling systems, hydrants or large services, and provided, further, that wherever the charge for automatic sprinkling systems, hydrants or large services exceeds the sum due for water furnished under meter rate then any such consumer shall be given credit for all payments under meter rates.

Rule 8 was amended at this time. It prescribed the minimum charges for service pipes one inch or over, exclusive of those supplied dwelling houses, flats, and churches; that is to say, rule 8 as amended applied to general consumption through large connections equipped with meters, and rule 22 to sprinklers having smaller connections equipped with meters. The meter customers would, under the rules, get credit on sprinkling charge for water consumed up to the point of the minimum charge fixed by amended rule 8. The minimum monthly rate fixed for service pipes equipped with meters under the amendment to rule 8 was the same as the minimum rate for sprinkling connections with like dimensions under rule 22.

The petitioner was charged by the water commissioners for consumption through meter service pipe $4.60, for each of the several months involved. This amount was credited on the sprinkling rates and bills sent for the balance of $20.39 per month. Payment of this amount was refused. The water commissioners notified the petitioner

of their intention to shut off its water connection. Thereupon it began this suit to enjoin the commissioners from so doing. The trial judge having found these facts in substance, and that "the rates fixed in said rules are arbitrary, exorbitant, and unreasonable," concluded that as a matter of law the rules were void and plaintiff was entitled to an injunction. From the judgment entered accordingly, this appeal was taken.

1. The water board raises a preliminary question. "The respondent before bringing this action did not in any manner seek an adjustment of rates with the water board, or attempt to arrive at a contract with the board for the service; neither does respondent ask the court to ascertain and determine a reasonable rate and tender payment of the rate so determined, but, on the contrary, it asserts the bold proposition that it is entitled to the service by law, without contract or compensation. If this be true, then the board can be compelled to install new connections for this class of service under like conditions." It refers in this connection to Christian & Craft Grocery Co. v. Bienville, 106 Ala. 124, 17 South. 352. It also contends that there is no inherent right to the use of water conferred upon a citizen simply by the enactment of the law creating the water department, that the latter must be supplemented by a contract regulating its use, and that the relation of the city to the user of water is that of contract. Powell v. City of Duluth, 91 Minn. 53, 59, 97 N. W. 450.

There can be little controversy, especially as to the latter part of these contentions, as general propositions of law. But in this case, as will subsequently appear, the city had made only unreasonable rates, had insisted upon the payment of them by the petitioner and proposed to sever connections unless illegal rates were paid. It did not appear that petitioner had failed or refused to pay a proper rate.

In view of the course of trial and of the argument here, however, the merits of the controversy are before the court in accordance with current appellate practice. That practice construes liberally what matters are presented for adjudication upon review, and inclines to finally determine the merits of a controversy. This is especially true where it is apparent that no injury will ensue, and that the result of a disposition on technical or formal issues only will be to have the very questions presented brought up on another appeal after the case had been sent

back to the trial court for obvious, but not apparently useful, amendments. Any other mode of procedure would result in only futile trouble, expense, and delay. There is an especial reason for deciding the merits of cases like this, involving public or semipublic questions.

2. The first question on the merits is whether the rules were impartial or discriminatory. The board insists that the only way in which it can place the sprinkler users as nearly as possible upon the same basis as those using meters on large connections was to give them credit for water consumed through their small metered service pipes, which they all have, and this was the reason for the adoption of rule 24. It gives them all the same opportunity and puts them all on a uniform basis. In point of fact, however, a uniform basis did not result, either in the principle of the rule or in its actual operation. If the post office undertook, to a limited extent, to deduct the postage on one class of matter from the postage on another, or if a railway company allowed to a limited extent a rebate on freight rates to the amount of passenger tickets bought, there would be a similar and certainly illegal discrimination. A more nearly analogous case of equally clear illegality would be the permission, to a limited extent, to deduct from water charges the amount paid for street paving or sewer construction, where the city operated the water system directly. The rules here involved enable persons having a sprinkling assessment and using also meter service to pay the sprinkling charge by the purchase of meter service. There is no more reason why they should be entitled to satisfy this public charge by buying water than by buying anything else. The discrimination resulting in fact is apparent from the difference in charges shown by the record to have been made to individuals of the same class for the identically same service. For example, five owners of pipe connections are all charged for pipe connections described as "2—4" a monthly rate of $12.49; the amounts deducted for meter service are, respectively, $2, $2.25, $3, $9, and $13. As a result these various owners are required to pay for exactly the same service the balance for sprinkling connections in the following sums, respectively: $10.49, $10.24, $9.49, $3.49, and nothing. It is trifling with figures to deny that this constitutes a demonstration of discrimination.

The effect is plainly more aggravated than merely discrimination between members of the same class. It constitutes discrimination

against ordinary householders and ordinary users of water. They suffer in point of law and to an undetermined extent in point of fact from the wrongful act of the board in failing to make a proper charge for both the sprinkling connection and for the metered service, and in failing to collect both. It is no answer to reply that they would not suffer practically because the water board would illegitimately make more money by compelling a certain part of the community, nolens volens, to buy water from it. It is obvious that, whether it is so designed or not, the practical effect of the rules is to compel property owners to buy water from the city and not to take it from any one else or from their own wells under the penalty of having to suffer this discrimination.

It is admitted that, if the rule is discriminatory, it is void. It would serve no useful purpose to cite the authorites for so obvious a proposition. Many of them will be found collated in the brief for the petitioner. The most nearly similar cases to which our attention has been called are Warsaw v. Village, 161 N. Y. 176, 55 N. E. 486; City v. Bienville, 130 Ala. 379, 30 South. 445; San Diego L. & T. Co. v. City of National City (C. C.) 74 Fed. 79; Id., 174 U. S. 739, 19 Sup. Ct. 804, 43 L. Ed. 1154. And see Lanning v. Osborne (C. C.) 76 Fed. 319; 6 Current Law 1871.

3. The second question on the merits concerns the right of the city to make any charge whatever for this sprinkling connection.

Among the pertinent considerations pressed upon our attention are the following: The city is put to no expense generally by virtue of the sprinkling connections, or specifically because of any necessity to maintain a given hydrostatic pressure. The mechanical contrivance is such that sufficient water pressure is maintained within the building to resist the pressure in the pipes. Further, while the city has a right to make a charge for water consumed for ordinary purposes, it has no right to charge for water supplied for protection from fire. As a matter of fact no charge is made or could be made for water used by the fire department in extinguishing a fire, although a single individual only would be benefited thereby. Individuals should not be required to pay water rates as a penalty for increasing the sufficiency of the fire department at their own expense by providing extraordinary and sufficient means of extinguishing fires immediately when they start.

We are of opinion that the argument does not justify the conclusion. So long as water supplied for protection against fire is a purely public service, under the control and management of municipal authorities generally and under the fire department specifically, no direct charge to individuals is proper. When, however, a sprinkling connection is made with private premises, the situation is materially different. These premises and the primary causes of catastrophe to the building and of the consequent possible use of disastrous quantities of water are primarily under the control, not of the public, but of the owner. A peculiar personal service is provided for his benefit, which is not enjoyed in common by the community in general, but is available only to a limited class of individuals. It does not advance the reasoning in this connection to split hairs between the "use" and the "consumption" of water. As a matter of good sense the property owner beneficially employs the water mains for his own purposes and to his own advantage, although he may not, except in case of fire, actually draw any water from the pipes. It is necessary and proper that for this he should pay. In effect he gets something of pecuniary value from another, which that other is not compelled to give except on the basis of contract. That the law requires the terms of that contract to be reasonable and impartial, or that advantage is mutual and involves no expense, is merely incidental or collateral. Such facts do not relate to the right to exact some consideration, however they may affect the extent of the charge which may properly be made.

Counsel for the board argues soundly that "section 19, c. 9, of the charter, which requires the city to pay the board by general taxation for water furnished for general public fire protection, as well as water used at public fountains and watering places, and by the various departments of the city. If a charge may be made for public fire protection, certainly there should be no question of the right to charge for private use in that regard." The conclusion is reached that a charge can be made. How great that charge should be in the view here taken, is not before us. On that subject no opinion is expressed.

4. The final question is whether the petitioner was entitled to an injunction. The trial court found that the damage caused by the act of severing the connection between the sprinkling system and the water main would be irreparable. Within the meaning of the term as here

used, that finding was sustained by the evidence. The board further contends that there is not at present any contract between the city and petitioner, and that petitioner has no inherent right to a connection not based on contract. It does not follow, however, that for this reason an injunction should be refused. The water board is engaged in a vital public service. It has unequivocally and affirmatively recognized the class of service for which it granted to the petitioner and with respect to which it has prescribed rules, although improper ones. The questions, then, are: Can it enforce an unreasonable rule by denying that service? Is it at liberty to refuse to make a contract whimsically or arbitrarily, as an individual has a right to do in his private business? It is elementary that courts will interfere to protect the public and individuals entitled to service against unreasonable charges and discriminations made by public utility corporations or bodies. The performance of their duties by such companies or bodies generally, and of water companies in particular, on reasonable terms, may be enforced, or the violation of such duties enjoined by law. The water board cannot arbitrarily refuse to furnish water to any one, at least for a purpose which it has recognized as legitimate and which it has granted to other persons. The most satisfactory case on this quite obvious rule, which we have examined, is Haugen v. Albina, 21 Ore. 411, 28 Pac. 244, 14 L. R. A. 424. See, also, Weimer v. Louisville Water Co. (C. C.) 130 Fed. 251; Farwell Farmers' Warehouse Assn. v. Minneapolis, St. P. & S. S. M. Ry. Co., 55 Minn. 8, 13, 56 N. W. 248; Richmond v. Clawson, 155 Ind. 659, 58 N. E. 1049, 1052, 51 L. R. A. 744, 747, collecting cases; Griffin v. Goldsboro, 122 N. C. 206, 30 S. E. 319, 41 L. R. A. 240; Farnham, Waters & Water Rights, p. 865, § 162c; 30 Am. & Eng. Enc. (2d Ed.) 426, 427.

Judgment affirmed.