RIVERSIDE, Inc., et al., Appellants,

v.

GULF STATES UTILITIES COMPANY,
Appellee.

No. 6008.

Court of Civil Appeals of Texas.

Beaumont.

April 19, 1956.

Rehearing Denied May 9, 1956.

Hustmyre, Bruce & McKee, Orange, for appellants.

Orgain, Bell & Tucker, Beaumont, for appellee.

ANDERSON, Justice.

Gulf States Utilities Company, as plain-. tiff, sued Riverside, Inc., and A. P. Simons. and William H. Francis, Jr., to recover a

balance claimed to be due it by defendants for water service. Trial to the court without a jury resulted in a judgment for the plaintiff, and the defendants have appealed.

At all pertinent times, plaintiff was supplying water to the City of Orange and its inhabitants. It was doing so on a commercial basis and under a franchise that had been granted it by the city. In addition to supplying water for domestic and private purposes, it also supplied water for fire protection purposes. The latter service required extra and larger facilities and vastly larger reserves of water than would have been essential without it, and, of course, a much greater capital investment than would otherwise have been necessary. As a consequence, plaintiff charged extra for it.

It charged at the rate of $50 per year for each fire hydrant extant, where the city was paying for the service, and at the rate of $40 per year for each fire hydrant extant, where an individual or private concern was paying for it. And such charges were not dependent upon the quantity of water used or upon whether any was used.

In the main and as regards residential sections other than the one presently to be mentioned, the city appears to have paid for the fire protection service. Whether or not it was under any special duty to do so, we are unable to say; it was and is a home-rule city, and its charter is not before us. Furthermore, neither the franchise that was granted the plaintiff nor any other contract that may have been entered into by plaintiff and the city is before us.

In July of 1948, Riverside, Inc., purchased from the Federal Government a large tract of land that was within the city limits of Orange. Some 1,582 housing units were situated on the land, and a system of water mains, pipes and fire hydrants had been installed by the government so that water could be supplied to the houses and the area. Title to all of these passed to Riverside, Inc., with the land; and the houses were thereafter rented, as individual units, to members of the general public.

Plaintiff had been supplying the government with water for the houses and area. However, it had done no more in this respect than deliver the water into the government's mains, at the government's property line. The water appears to have been supplied under an express contract but it was charged for at the regular rates in effect for the City of Orange generally. Charges for fire-protection service had been regularly made at the rate of $40 per year for each of 45 fire hydrants that were on the government's mains and had been regularly paid by the government.

Upon becoming the owner of the property, Riverside, Inc., requested a continuation of the same service plaintiff had been supplying the government. Plaintiff accordingly continued to deliver water into the same mains, at the same points, just as it had done while the government owned the property, and it was still doing so when this case was tried.

Plaintiff offered in the beginning to purchase the water mains and fire hydrants from Riverside, Inc., and to supply water to the houses and area on the same basis it was supplying water to other residential sections of the city, but the offer was declined. Rent schedules which had received Federal approval had been set up for the houses on the basis that water was to be supplied without extra charge, and Riverside, Inc., concluded that it was to its advantage to leave them that way.

No express contract with reference to the service to be supplied by plaintiff and the rates to be charged was shown to have been entered into between the parties. A proposed contract was reduced to writing and was submitted by plaintiff to Riverside, Inc., but the instrument was never executed by the latter. As a consequence, plaintiff continued to make the same charges after the change in ownership that it had made while the government owned the property. All water that was delivered was charged for at the regular rates in effect for the rest of the city, and fire protection was charged for at the regular rate in effect for individuals

or private concerns—i. e., at the rate of $40 per year for each fire hydrant on defendants' mains.

Statements showing the amounts claimed to be due it were mailed by plaintiff to Riverside, Inc., or to the latter's successors, Simons and Francis, each month. The defendants regularly paid for all water shown to have been used but refused from the beginning to pay the standby-fire-protection charges. This suit was brought to recover the aggregate of such charges, together with interest from the respective dates when they are claimed to have been payable.

By their first point of error appellants advance the proposition that "a public utility has no right, in the absence of express contract, to charge private persons or concerns for standby fire protection enjoyed by the community in general." In other words, as we understand them, they would have us hold that, irrespective of the attendant circumstances, the mere fact that a public service corporation supplies fire protection to most areas of a municipality without direct cost to those who live or own property in such areas precludes the corporation from charging those who live or own property in other areas of the municipality for similar service, unless such charges are authorized by an express contract.

Appellants cite no authority which they claim supports their proposition directly, but take the position that the following cases from other jurisdictions support it by implication: Gordon & Ferguson v. Doran, 100 Minn. 343, 111 N.W. 272, 8 L.R.A.,N.S., 1049; J. W. Edgerly & Co. v. City of Ottumwa, 174 Iowa 205, 156 N.W. 388; Shaw Stocking Co. v. Lowell, 199 Mass. 118, 85 N.E. 90, 18 L.R.S.,N.S., 746; Cox v. Abbeville Furniture Factory, 75 S.C. 48, 54 S.E. 830; North Coast Power Co. v. Pittock & Leadbetter Lumber Co., 118 Wash. 542, 204 P. 180. To our minds, however, the cited cases go no further by implication than to hold that it is unlawful for a municipality that is operating its own water system or for a public service corporation such as appellee to discriminate arbitrarily or unjustly between its customers or between those who are entitled to be served by it, either as regards supplying service or as regards the rates at which charges are made for comparable services rendered under substantially the same conditions and circumstances; and this principle of law is already well established in this state. City of Galveston v. Kenner, 111 Tex. 484, 240 S.W. 894; Allen v. Park Place Water, Light & Power Co., Tex.Civ.App., 266 S.W. 219, writ refused; Town of Highland Park v. Guthrie, Tex.Civ.App., 269 S.W. 193, writ refused; City of Houston v. Lockwood Inv. Co., Tex.Civ.App., 144 S.W. 685. Each of them—i. e., each of the cases on which appellants rely—dealt either with a situation where a municipality was operating its own water system and had assumed responsibility for supplying its own ordinary fire protection or else with a situation where a municipality had contracted to have ordinary fire protection supplied it and its inhabitants at the expense of the municipality or in return for a franchise; and the courts, when not merely construing an express contract between a municipality and its supplier of water, were concerned only with the question of whether discrimination regarding either service or rates was being practiced by the agency that was supplying the service. When liability was held to exist because the one held liable was receiving a different kind or quality of service from that which was being supplied others, the courts were but holding that no discrimination had been shown. There is no suggestion in any of the cases that because a municipality pays for the fire protection supplied some of its areas by a public service corporation the public service corporation can be required to furnish similar service to other similar areas of the municipality free of charge. Such, however, would be the effect of the holding appellants would have us make.

We think appellants' position is clearly untenable. In the absence of a contract obligating it to do so, and not having assumed responsibility for doing so, appellee was under no duty to supply fire protection to any part of the City of Orange free of charge. Having apparently assumed re-

sponsibility for supplying such protection to the city generally, it was perhaps obligated by the rule against discrimination to make the service available to appellants if they desired it and at the same rates charged for other residential areas of the city. But it was under no obligation to supply the service without expectation of being paid for it by someone. It owed appellants no special duty in this respect beyond not discriminating against them, and no discrimination is reflected by the record. The service was supplied in a satisfactory manner and at rates which were not shown to be in excess of those charged the city for the same kind of service. Due to the fact that they owned their own mains and fire hydrants and to the fact that water actually used for fire protection purposes passed through their meters and was paid for just as other water was, appellants were charged at the rate of $10 less per fire hydrant for fire protection than the city was, and no effort was made to show that this was not a fair allowance because of the mentioned differences in the manner of supplying the service. Appellee was not shown to have any contractual right to charge the city for the fire protection supplied appellants, nor to have been authorized by the city to do so, and no statute or common law rule that authorized it to charge the city for the service without the city's consent has been brought to our attention. We are unable, therefore, to see how appellee can be charged with discriminating against appellants merely because the city saw fit to pay for fire protection for some of its areas and not others. This was not something appellee could control, and it should not operate to appellee's prejudice. We are of the opinion, therefore, that the rule against discrimination did not bar appellee from charging appellants for the fire protection supplied them.

It does not necessarily follow, however, that appellants are liable for the service. If they are, it is upon the basis of contract, and we must therefore determine whether an obligation to pay for the service arose in this manner. If so, the contract must be implied either in fact or in law, because, as already stated, there was no express contract between the parties.

We think that in the beginning the circumstances were such as to give rise to a contract implied in fact. Appellants expressly requested a continuation of the same service appellee had been supplying the government, which included the fire protection, and pursuant to that request appellee supplied the service. The fire protection service was a valuable one which is ordinarily charged for by public service corporations and which appellee was under no duty to supply free of charge. Appellants had no reason to suppose, so far as the record reflects, that the service would be supplied without charge, and, since appellee had dealt with no one else regarding the service, appellants should have anticipated that appellee would look to them for compensation, because there was no one else to whom appellee could look. We are of the opinion, therefore, that, according to the ordinary course of dealing and the common understanding of men, a mutual intent to contract was indicated and that appellants impliedly promised to pay for the fire protection service. 10 Tex.Jur. 19, Contracts, Sec. 8.

Assuming that appellants were at liberty to terminate the implied contract at the end of any month and that no contract implied in fact was in force after they first refused to pay for the fire protection service, we are of the opinion that a quasi or constructive contract or series of contracts thereafter came into being between the parties. Appellants never did countermand their original request that appellee supply them the same service appellee had been supplying the government, nor did they ever either direct or authorize appellee to discontinue the fire protection service. Furthermore, they neither dismantled their fire hydrants nor did anything else to render the service unavailable to themselves, and appellee could not supply them or their tenants water for domestic use without at the same time supplying the fire protection, because water for all purposes was delivered

through the same mains. The evidence leaves no doubt that appellants desired the fire protection and expected appellee to supply it. The service was supplied regularly and appellants accepted it and its benefits. Among these benefits were materially lower fire insurance rates than would otherwise have been in force. We feel that in the circumstances justice and equity require that appellants pay for the service, and the law implies a promise on their part to do so. Unless required to pay for it, appellants will have been, in effect, unjustly enriched at appellee's expense. 10 Tex.Jur. 22, Contracts, Sec. 9; 12 Am.Jur. 502, Contracts, Sec. 6.

If it was their desire to be placed upon a parity with other property owners as regards fire protection, appellants should have importuned the City of Orange to make the necessary adjustments. They have merely mistaken the true nature and source of their grievance. Their first point is overruled.

Appellants' remaining point of error is as follows: "The court erred in allowing recovery of interest from the date of delivery of each monthly statement, because Article 5070, Vernon's Annotated Civil Statutes of Texas, provides that on open account interest shall be allowed from the first day of January after same are made."

Extensive calculations which we do not feel called upon to make would be necessary to determine whether or not the trial court in fact allowed plaintiff to recover interest from their due dates on the amounts due monthly, because judgment was merely rendered for a lump-sum of $13,691.31. Even assuming, however, that plaintiff was permitted to recover the equivalent of interest on the amounts due monthly, we think no error is presented. Damages having most of the attributes of interest may be awarded for the wrongful detention of money. 13 Tex.Jur. 258–264, Damages, Secs. 140–147; Watkins v. Junker, 90 Tex. 584, 40 S.W. 11; Simmons v. Wilson, Tex. Civ.App., 216 S.W.2d 847. An open account such as is contemplated by Article 5070, V.T.C.S., as that statute has been construed by our courts, was not involved. See McCamant v. Batsell, 59 Tex. 363; McDaniel v. National Steam Laundry Co., 112 Tex. 54, 244 S.W. 135. As previously held, plaintiff's cause of action sounds in contract. Point two is accordingly overruled.

No error appearing, the judgment of the trial court is affirmed.