**JOE T. PRESSWOOD, INC. and Joe Presswood Co., Inc., Appellants,**

v.

**HOUSTON INDUSTRIAL WELDING SCHOOL, INC., Appellee.**

**No. 17312.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

May 17, 1979.

Rehearing Denied July 19, 1979.

Clark, Lowes & Carrithers, C. Ed Carrithers, Houston, for appellants.

Charles M. Burdeaux, Houston, for appellee.

DOYLE, Justice.

Appellant, Joe T. Presswood, individually and Joe T. Presswood Company, Inc., appeals from a judgment rendered in favor of appellee, Houston Industrial Welding School.

In 1976, appellant, who is an auctioneer, entered into a written contract with appellee to sell personal property belonging to appellee at a public auction. The merchandise to be sold included welding machines, machine shop equipment, office equipment and furniture. The gross proceeds of the sale were $59,405.50. Of this total, $5,084.00 was not collected, which amount represented a bad check written by one John Davies to pay for merchandise purchased at the auction.

Immediately following the auction, appellant accepted Davies' check and authorized delivery of his purchased goods. Davies accepted delivery of the goods except for 42 cans of welding rods totaling an amount of $945.00 which was included in the total price of $5,084.00.

After Davies' check was dishonored at the bank, appellant recovered all of the goods delivered to Davies, except for six items totaling a price of $840.00. Appellant offered to return said goods to appellee, but it refused to accept them. Appellee filed suit against appellant to recover the full amount of the $5,084.00 Davies' check with interest from November 9, 1976. Appellant answered by denying liability and filed a cross-action against appellee to recover reasonable storage fees for the items recovered and held in its possession from date of tender.

Trial was to the court and judgment was rendered against appellant in the amount of $4,067.89 with interest at 9% per annum from date of judgment until paid. The court in arriving at the judgment, deducted from the bad check amount of $5,084.00, the $945.00 for the 42 cans of welding rods which never left appellee's possession; deducted appellant's 9% commission from the $4,139.00 amount; and then added 6% inter-

est for 16 months on the $3,766.49 total, making a judgment total of $4,067.89. The court also found that $35.00 per month was reasonable compensation for storage of said goods, but denied appellant recovery for such storage fees. The court further ordered appellee to transfer title of said goods to appellant in order that the goods could be sold to mitigate appellant's loss resulting from the judgment. The court filed findings of fact and conclusions of law.

Appellant sets forth sixteen points of error, the first four of which complain that the trial court erred in finding that the parties entered into an oral contract whereby the appellant agreed to sell appellee's goods for cash or checks with a letter of credit. Appellant also complains of the court's conclusions that appellant breached the contract for sale of property by public auction by accepting an out-of-town check from John Davies and allowing the property to be taken away from the sale premises without a release. The trial court concluded that the appellant was negligent in accepting a check for payment of the goods without a bank letter of credit. This, appellant contends, was also error. These four points of error are based on the factual insufficiency of the evidence. Hence, we shall consider the entire record in passing upon them. *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Calvert, "No Evidence" Points of Error, 38 Tex.L.Rev. 361 (1960). These points address the duty of the appellant under the contract with appellee.

An examination of the contract entered into between appellant and appellee on October 12, 1976, shows that appellant is authorized to act on behalf of appellee and that he will receive a 9% commission on the total gross sales. Said contract also authorized him to promote and advertise the auction, but the contract is silent as to check collections or guarantees of bad checks. The question arises as to whether parol testimony is admissible to clarify the handling of checks in the process of selling appellee's property. In 23 Tex.Jur.2d 502 Evidence Sec. 342 (1961), page 503 the general rule is set out as follows:

In brief, the extrinsic evidence rule ordinarily requires the exclusion of parol evidence of prior or contemporaneous negotiations, conversations, representations, or statements that would add to or vary the terms of written agreements that are clear on their face.

However, in *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30 (1958), the Texas Supreme Court allowed an oral agreement to be admitted into evidence by parol testimony in order that holders of a note would know how they were to apply the first note payments. Therein it was stated:

. . . the facts and circumstances surrounding the transaction pointed to the probability of the agreement . . . The collateral agreement in this case is one which might naturally have been made by parties situated as were petitioner and respondent. The proof shows that the Citizens National Bank had similar agreements with six other automobile dealers.

Under the facts presented by the case before us, the trial court properly admitted parol evidence of testimony pertaining to oral representations clarifying the procedures for handling checks in the auction of appellee's property, since a vital point to be determined was who would assume such responsibility for any bad checks tendered.

Testimony elicited at the trial showed that H. W. Darrow Sr. and Brian Jenkins, representatives of appellee, stated that appellant orally represented that he would assume responsibility for all checks. When asked what appellant had stated when the matter of accepting checks was discussed, these answers followed:

"(Mr. Darrow) A. I said, "You assured me several times that you'd check with the bank, that you wouldn't release anything until the man's check had been cleared, and if it was bad, 'you still got your equipment because we don't let him haul if off,' said 'when you get that release from me, I got two men stationed at your place, they are going to deliver the

goods that was bought. Before they deliver them they have a slip from me okaying it. When you get that, they know that the check's then good, everthing's been paid. We don't issue them unless we do that.'"

"(Mr. Jenkins) A. As I recall, the question was put to Mr. Presswood at the time of our initial meeting with him: What protection we, Houston Industrial Welding School had at the time of the auction against possibly someone buying something and failing to pay for it. He told us that all parties at the auction would have to have a letter of credit before they would accept a check from them, so that we were protected; and he also told us, at the time the auction was conducted, as the parties came to pick up the things that they had bought, he would authorize us to release these items to them, let them physically take them from the premises. That was another thing. That was protection for us. That they would have time to check out this person's purchasing check, to make sure that it was good, prior to the time they released the items."

Appellant by his testimony admits responsibility by stating:

"A. They agreed. They said that—I—in approaching anyone with having an auction sale, of course, we try to tell them that we accept the responsibility of collecting the funds."

■ Further, appellant in advertising this auction recited in his brochure:

"Terms: Company or Personal Check will be accepted with Bank Letter of Credit."

Appellant contends, however, that these terms are not to be literally construed, but only to scare off insolvent purchasers. He states that he uses MIE to protect against bad checks and requires identification, but not a bank letter of credit. He further explains that while he does accept responsibility for collecting funds, that in his thirteen years in the auction business he has never guaranteed checks at auction sales and that it is a customary practice and procedure for auctioneers not to guarantee checks of purchasers at auction sales. Notwithstanding such avowals, it clearly appears that appellee was led to believe that appellant would be responsible for the clearance of any check tendered for the purchase of its merchandise. By his oral representations, printed brochures and his policy of not releasing goods until any check given therefor had been honored, appellant set a standard of care for himself and his auction company which revealed that he was cognizant of the grave consequences that could result from dishonored checks. Appellee contends that appellant was negligent in not complying with his outlined standard of care with regards to collecting checks and that such negligence constituted a tortious breach of the agreement between the parties. We agree with this contention.

The legal relationship created between appellant and appellee was one of agent and principal. 7 Tex.Jur.2d Auctions and Auctioneers § 5, § 1 (1975) and 7 Am.Jur.2d Auctions and Auctioneers § 64 (1963).

As the relation between an auctioneer and one for whom he undertakes to conduct an auction is purely contractual, the nature and extent of his liability to the vendor depend in each instance upon the terms of the particular contract existing between them . . . . He is also personally responsible for any loss that is a consequence of his negligence—that is, failure to use ordinary care and skill in the performance of the duties confided in him. 7 Am.Jur.2d, supra at 276.

The record reveals that the appellant had been an auctioneer for about thirteen years and had encountered the bad check situation before in his business. Adherence to the standard of care which he proclaimed to the appellee, would have avoided the consequences herein involved. In Van Velzer v. Houston Land & Trust Co., 16 S.W.2d 865 (Tex.Civ.App.-Beaumont 1929 no writ) the court discussed negligence of an agent against his principal.

Ordinary care was the measure of duty owed by defendant to plaintiff in looking after and protecting the property from injury. The inquiry is whether the negligent act of defendant alleged by plaintiff, if true, was the proximate cause of plaintiff's damages. The general rule is that, in order to constitute the proximate cause of an injury or damage, the damage must be the natural and probable result of the negligent act or omission and that it ought to have been foreseen in the light of the attending circumstances (citations omitted).

The trial court, after listing supportive findings of fact, made these conclusions of law:

1. Defendants breached the agreement by accepting an out-of-town check which had not been cleared by the bank on which it was written.

2. Defendants breached the agreement by allowing the goods, (except the welding rods) to be taken away from the premises without a release.

3. Defendants were negligent in the manner in which they breached the agreement, which negligence was a proximate cause of Plaintiff's damage.

4. Plaintiff is entitled to interest in the amount of 6% from the date of the sale for 16 months on the amount of $3766.49 or $301.40.

5. Plaintiff was not obligated to accept the partial list of goods from Defendant which had been retrieved from Davies loaded with expenses of recovery and storage.

We find the evidence sufficient to support findings 1, 2 and 3 above and accordingly overrule appellant's first four points of error.

In view of our opinion on the issue of negligence, we hold appellant's points of error five through eight to be without merit. They jointly complain of the trial court's errors in concluding that appellee was not obligated to accept the tender of a part of the merchandise recovered; that appellant was not entitled to recover storage charges; and that title to the goods in question passed from appellee to appellant. If appellant had sold the property to a solvent buyer, or had required a bank letter, or had withheld any release of the goods until the buyer's check had cleared, there would have been no need to tender back any goods; no question of title; and no problem of storage space. These occurrences were foreseeable consequences of appellant's negligence and the trial court did not err in finding these points against him.

Appellant cites buyer-seller statutes in his argument, but agent-principal rules apply in this instance and the agent is responsible for damages to the principal's property. *Van Velzer v. Houston Land & Trust Co.,* supra.

■ Appellant further states he is entitled to recover storage fees under the equitable remedy of quantum meruit.

In *Colbert v. Dallas Joint Stock Land Bank,* 129 Tex. 235, 102 S.W.2d 1031, the court listed two prerequisites to recover under the theory of quantum meruit.

It is based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted. 5 C.J. p. 1389, § 21; 28 R.C.L. pp. 668, 669, Sec. 3, 4. . . . The right is founded upon the rule that it would be inequitable for one who has accepted the services of another to refuse to pay for them. 10 Tex. Jur. p. 412 § 238.

Our case is clearly distinguishable from the *Colbert* case relied upon by appellant. In *Colbert* a realty broker had secured a buyer for the defendant's land; the sale had been made; and the defendant refused to pay the realty broker (Colbert). The Texas Supreme Court reversed both the district court and the court of civil appeals and remanded on the grounds that the case was tried on a contract theory rather than on quantum meruit which the evidence tended to support. The claim for storage fees, in the case before us, arose as a direct result of appellant's negligence based upon

**768**

a contract with appellee, which the trial court found that appellant breached to appellee's damage. The trial court was correct in denying the storage claim.

The remaining points of error by appellant principally submit that the trial court erred by applying the wrong measure of damages. These points are overruled.

Appellant specifically claims that he owes appellee only for the items not recovered, and not the amount of profit from the sale as made. We do not agree with this contention. Upon a finding that the contract involved has been tortiously breached, "Lost profits properly constitute an element of damages in actions for breach of contract and also in actions to recover damages for a tort." 17 Tex.Jur.2d Damages Sec. 137 (1960) p. 203 and the cases therein cited. Further, where there is a finding that negligence is the proximate cause of the damages claimed, and damages are awarded, they are measured by " . . . the value thereof at the time and place immediately before and immediately after the injury, with legal interest . . . ." *Chase Bag Co. v. Langoria,* 45 S.W.2d 242 (Tex.Civ.App.-Waco 1931, writ dism'd). Once appellee had established its entitlement to damages with interest, such interest was payable from the date of the wrongful detention of its money by appellant, i. e., from and after November 9, 1976, a period of 16 months. Since interest may be awarded for wrongful detention of money, we find no error in the trial court's award. *Riverside, Inc. v. Gulf States Utilities Company,* 289 S.W.2d 945 (Tex.Civ. App.-Beaumont 1956, writ ref'd n. r. e.).

The appellant's contention that the trial court found that title to the goods in question passed from appellee to appellant is not supported by the record. Neither the findings of fact, the conclusions of law, nor the judgment reveal any such determination by the court. Appellant is correct in stating that he would be liable for conversion if he sold property for which he did not have legal title. *Anderson v. King,* 370 S.W.2d 775 (Tex.Civ.App.-Texarkana 1963, no writ). In the case at bar, however, the judgment recites plaintiff must "do any act or give any title necessary or cooperate in any way needful for the defendant to dispose of the property . . . ." All other points of error presented in complaint of the judgment have been considered and are overruled.

The judgment of the trial court is affirmed.

EVANS and WARREN, JJ., also sitting.