## In Re Caribou Water, Light and Power Company.

### Aroostook. Opinion July 15, 1922.

*The Public Utilities Commission may order an increase of rates over those fixed in a contract between a water, light or power company and the inhabitants of a town, consumers, which would not ipso facto amount to an impairment of the contract nor a taking of property "without due process" in violation of the constitutional provisions. In this State the Public Utilities Commission has no authority to measure in any part the rates that should be paid by a municipality, by the amount of taxes assessed upon the property of the utility company.*

In the instant case the Commission not having found as a matter of fact that the contract was in part executed by the compromise or release of the claim of the town against the Company, and this court having no power to review the evidence and determine facts, the issues raised by the town in its brief cannot be fully determined upon its bill of exceptions.

The Commission where the rates fixed by contract are not discriminatory within the definition of the statute, in determining whether they are unjust and unreasonable should take into consideration the full sum paid for the service: not only the annual payments, but also any sum or consideration paid in advance at the inception of the contract.

On exceptions. The Caribou Water, Light and Power Company, is a corporation for furnishing water, light and power to municipalities and their inhabitants for domestic purposes, and for fire protection. In 1903, the town of Caribou entered into a contract with the corporation for water for fire protection. Under this contract hydrant rentals were fixed at a certain amount for a period of forty years, and as a further consideration, the town should pay annually such sum as might be assessed against the company as taxes. In January, 1921, the corporation filed a petition with the Public Utilities Commission, claiming that by increased cost of operation and maintenance, the rates fixed under the contract were insufficient to enable it to continue to furnish water in accordance with the conditions of the contract. Upon a hearing the Commission ordered an increase of one thousand dollars in the contract rate, and that in addition thereto ordered that the town should pay each year a sum equal to the amount assessed for such year as taxes against the company. To this order of the Commission the town of Caribou excepted. Exceptions sustained.

The case is fully stated in the opinion.

*Powers & Guild,* for the Caribou Water, Light & Power Company.

*Pattangall & Locke, Cyrus F. Small and W. P. Hamilton,* for the town of Caribou.

SITTING:   CORNISH, C. J., SPEAR, PHILBROOK, DUNN, MORRILL, WILSON, JJ.

WILSON, J. On bill of exceptions of the town of Caribou to rulings by the Public Utilities Commission. According to the facts found by the Commission and the bill of exceptions, the rulings excepted to involve the reasonableness of rates for public hydrants and other municipal service, and particularly the effect of a contract entered into between the town of Caribou and the Water Company in which the rates for such service were fixed for a period of practically forty years from March 24th, 1903, and also the authority of the

Commission, as a part of the rates for such service, to order the town to repay to the company such sums annually as are assessed against it for taxes.

As in the recent case of *Hamilton* v. *Caribou Water, Light and Power Co.*, the facts found by the Commission are insufficient for a full determination by the court of the main issues raised by counsel, nor does the bill of exceptions comply with the established practice in this court. The court will, however, as in the case referred to, consider and dispose of the case as presented so far as the facts found by the Commission will permit.

From the findings of the Commission it appears that a contract was entered into by the town and Water Company in 1903, under which the company agreed to furnish water for a certain number of hydrants at a fixed annual sum and additional hydrants at fixed annual rates, and also to furnish water free for certain public buildings, street sprinkling and other public purposes. The Commission also find that the rates established in said contract are unreasonable, unjust and inadequate, in that the amount received for fire protection and other municipal purposes is too small and does not bear a proper relation to the total revenue of the company.

The town contends, however, that the evidence discloses that a part consideration for the rates established in the contract of 1903 was the release of a claim which the town had against the company under a prior twenty-year contract entered into in 1889, which claim had been judicially determined, though not reduced to an amount certain, *Caribou* v. *Caribou Water Co.*, 96 Maine, 17; that in settlement of this claim or in consideration of the waiver thereof by the town the present contract was entered into, in which the rates for the municipal service were measurably lower than those provided for the same service in the prior contract of 1889, under which the claim arose, and which the present contract superseded; that the effect of such release or waiver was that of a part payment in advance for the service to be rendered by the company under the present contract, and to this extent, the contract being in part executed, the rates established therein cannot be disturbed and new rates fixed by the Commission without violating the State and Federal constitutions.

Though essential to the full determination of this case, the Commission makes no findings upon this point except to say: "Counsel for the Town urges that this contract ought not to be disturbed

because as he alleges the Town surrendered certain valuable property rights at the time the contract was made. The facts alleged, however, if proved, are not in our opinion sufficient to remove this contract from the effect of the decision of this Commission in the Lincoln Water Co., case sustained by our Court in 118 Maine, 382."

An examination of this statement, however, shows that it does not fully state the contention of the town, which is, that it not only surrendered up a valuable property right, but that such surrender or release constituted a part payment in advance for the service to be furnished under the new contract.

The question may be raised as to whether the evidence before the Commission would have warranted a finding that the waiver or release of its claim by the town under the old contract amounted to or was understood by the parties to be of the nature of a part payment in advance for the service to be furnished by the company under the present contract, or whether the town in view of the nature and origin of its claim simply waived it in consideration of the execution of a new contract under which it was to have additional service at reduced rates, which contract it must be held to have entered into with the full knowledge that if at any time the rates therein fixed become unjust and unreasonable, the State in the exercise of its police powers might fix new rates.

Upon this point the court expresses no opinion, as it is not its province to determine facts in this class of cases. But conceding for the moment, as the Commission apparently intended in its ruling upon this point, the full contention of the town, would the order by the Commission increasing the rates over those established in the contract of 1903 necessarily amount to an impairment of that contract nor the taking of property without "due process" in violation of the constitutional provisions?

We think not. Assuming for example, that the town at the execution of the contract had actually paid in advance in consideration of the service to be furnished by the company the sum of ten thousand dollars, and also obligated itself to pay annually in addition thereto a stated sum per unit of service, the mere fact that it had paid in advance a part of the agreed price for the service to be furnished would not deprive the State from considering all the circumstances and determining upon all the facts whether the total amount received

by the Utility under the contract constituted reasonable and just rates for the service furnished.

While there are cases where the courts have held that a release of a right or claim, or the compromise of a suit, or even the transfer of property rights, as a right of way, have not prevented the State from establishing new rates without regard to the claim released or the property conveyed, *Louisville etc., Rwy.* v. *Mottley*, 219 U. S. 467; *Gas Co.* v. *Public Service Com.*, 73 W. Va., 57; *Seaman* v. *Rwy. Co.*, 127 Minn., 180; *Hite* v. *C. I. & W. R. R. Co.*, 284 Ill., 297, 299; in all these cases, however, the rates established in the contract were clearly discriminatory, and there was in each case either a State or Federal statute declaring all such discriminatory rates to be unlawful.

But where, as in the case at bar, the rates established in the contract are not discriminatory within the definition of our statute, and the contract is valid until the Commission shall first have determined after hearing that the rates fixed therein are unjust and unreasonable, In re *Lincoln Water Co.*, 118 Maine, 382, when they then become unlawful, R. S., Chap. 55, Sec. 6, the Commission in determining whether they are unjust and unreasonable should, we think, take into consideration the full sum paid for the service, not only the annual payments, but also any sums or consideration paid in advance at the inception of the contract. Once determined to be unreasonable they become unlawful and the contract cannot be enforced, whereupon the Commission may establish such new rates as it determines upon all the facts to be reasonable and just.

But again assuming as contended by the town that the release or waiver of its claim under the prior contract was in the nature of an advance and partial payment, the findings of the Commission do not show whether it took it into consideration in determining whether the rates under the present contract were unreasonable, unjust and inadequate. The inference, perhaps, is strong that it did not, but as the exceptions must be sustained on another ground, if it failed to do so, it may correct the error upon another hearing, provided, of course, it first determines that the release or waiver of its claim by the town was intended by the parties as in the nature of part payment for the service to be furnished under the present contract, or that such was its legal effect.

In arriving at these conclusions we have not overlooked the cases of *Schiller Piano Co.* v. *Ill. Utilities Com.*, 288 Ill., 580; *Village of*

*Long Beach* v. *Long Beach Power Co.*, 171 N. Y. Supp., 824, or the decisions of the Ohio Court, the constitutional provisions of which State in some particulars differ from ours.   We think these cases may be differentiated from the case at bar, or so far as they are in conflict with our conclusions should not be followed.

In fixing the new rates to be paid by the town, however, the Commission in addition to the specific sums ordered to be paid annually for hydrants, street sprinkling and other public uses, also ordered the town to repay to the Company the amount annually collected by it as taxes upon the property of the Company.

The town contends that the Commission is without authority to establish rates which are determined in this manner.   We think there is force in this contention.   Although relief from taxation by agreement for a consideration has been upheld by this court, *Water Co.* v. *Waterville*, 93 Maine, 586, it does not follow that a rate-making body has authority to measure in any part the rates which should be paid for the municipal service by the amount of the taxes assessed upon the property of the Utility, even though it undertakes to do so under the guise of making it a part of the amount to be paid by the town for the service furnished by the Utility.

The determination of what are reasonable rates under the Act creating the Public Utilities Commission in this State contemplates, we think, certain and definite rates, and not rates which may fluctuate from year to year by reason of the acts of some other body, as in this case the town and its Board of Assessors.   The difference in the amount paid by the taxpayers according to such method and what we conceive to be the correct method may be small and in most cases very likely would be negligible, as the Utility is ordinarily entitled to receive from reasonable rates sufficient to meet its operating expenses including taxes, but in strict theory such sum should not come from the municipal rates alone, but from all classes of service. Taxes are always recognized as a part of the necessary operating expenses of a Utility to be borne by all the consumers in proportion to the value of the service received by them, and not by all the taxpayers of the town or city whether users of the service or not, as it must be, if the entire tax is taken out of the municipal rates in accordance with the order of the Commission in this case.

It may be a practical and effective way of restraining what we have no doubt is a natural tendency of municipal officials of meeting

increased municipal rates by increased valuation of the Utility's property, a practice which while it should be condemned, may not be legally circumvented by any automatic arrangement of elastic rates which contract and expand with the valuation and tax rate. A notice to the municipality that increased valuation and taxes will only produce further increase in rates, if requested by the Utility, would probably be just as effective. At least, it would be within the law.

The order of the Commission, therefore, in effect making the amount of the taxes collected of the company by the town each year in part a measure of what are reasonable rates to be paid by the town, being, as we think, unauthorized under the Public Utilities Act of this State, the exceptions by the town to the order of the Commission in these proceedings must be sustained.

> *Exceptions sustained.    The Clerk of this Court to so certify to the Clerk of the Public Utilities Commission.*