GILBERT E. GAY ET ALS

*vs.*

DAMARISCOTTA-NEWCASTLE WATER CO.

Kennebec.     Opinion September 26, 1932.

*Ralph O. Brewster*, for protestants.

*McLean, Fogg & Southard*, for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, THAXTER, JJ.

STURGIS, J. The Damariscotta-Newcastle Water Company, a public utility furnishing water in the towns of Damariscotta and Newcastle in this State, was organized in June, 1924. Its domestic service extends through both towns, but Damariscotta only takes water for fire protection. Its original rates were established and became effective August 1, 1924. Its commercial and industrial rates were reëstablished two years later and were further increased on July 28, 1927. Its hydrant rates, as originally established, remain unchanged.

On May 13, 1931, the Company filed a proposal for an increase in its hydrant rates in Damariscotta from $135 per hydrant to $185 for each of the first twenty and $100 for each additional hydrant used. Protest bearing the signatures of Gilbert E. Gay and twelve other citizens and taxpayers of Damariscotta was filed July 31, 1931, and the Commission suspended the operation of the new schedules. Further suspension was ordered and, by decree of January 28, 1932, the Commission disallowed the proposed rates. Exceptions duly alleged and allowed are certified to this Court.

The decree of the Public Utilities Commission is accompanied by comprehensive and detailed findings of fact upon which it is based. The history of the Company, as disclosed by records and reports on file, is reviewed at length. The original investment in plant and all additions thereto of record are noted, an appraisal made by the Engineering Department of the Commission as of February 15, 1928, is refigured in the light of changes in costs of labor and supplies and a Reproduction Cost Less Depreciation is produced. With a consideration of working capital and going concern value, it is found that the fair value of the Company's property devoted to the public service at the time of the inquiry was $125,000.

The revenue of 1930 of $15,247.43 was taken as the probable annual gross revenue and, using the actual operating expense for the same year of $7,608.64 as a basis, by deductions for what appeared to be unusual expenditures, an allowance of $1,000 for depreciation where none had been charged by the Company and a small amount for the sake of even figures, an annual operating expense of $7,700 is estimated, from which a probable gross income of $7,547.43, yielding an annual rate of return of 6.04 per cent, is computed.

The Company claims that the rate of return estimated by the Commission is too high. Neither the accuracy of the valuation adopted nor the use of the 1930 revenue is questioned, but complaining that the depreciation allowance is inadequate and operating expenses are under-estimated, the Company forecasts its annual return as from 5.08 to 5.68 per cent. Although the Commission, recognizing the existence of a period of falling prices and reduced costs, foresees its continuance and concludes that, without the recurrence of unusual expenditures, with proper management, operating expenses should be somewhat lower, the Company sees no opportunity for substantial retrenchment.

The inquiry by the Commission, however, was not limited to the adequacy of the return from existing rates viewed solely from the standpoint of the Company. The character and quality of the hydrant service rendered and its present cost to the municipality was examined, and a finding that the reasonable worth of this service did not exceed its cost was accepted as the controlling factor in the case rather than the probable rate of return. The legal sufficiency of the ruling below upon this issue is the crucial question on this review.

The numerous grounds assigned for the exceptions alleged may be summarized as follows: (1) the existing hydrant rates are unreasonable and confiscatory and the enforcement of their continuance denies the Company a fair return on the value of its property devoted to the public service in violation of the law of this State and the Constitution of the United States; (2) the findings of the Commission as to the reasonable worth of the hydrant service furnished was not based on any adequate evidence and disre-

garded applicable rules of law; and (3) inadmissible and prejudicial testimony was admitted.

Revised Statutes, Chap. 62, Sec. 16, provides that the rates made, exacted, demanded or collected by any public utility for any service rendered, and this includes the furnishing of water, "shall be reasonable and just, taking into due consideration the fair value of all its property with a fair return thereon, its rights and plant as a going concern, business risk and depreciation." And it is the general rule that the enforcement of rates which are not sufficient to allow a fair return on the value of the property devoted to the public service at the time it is being used deprives a public utility of its property in violation of the Fourteenth Amendment to the Constitution of the United States. *Smyth* v. *Ames*, 169 U. S., 466; *Willcox* v. *Consolidated Gas Co.*, 212 U. S., 19; *Bluefield Waterworks & I. Co.* v. *Public Service Commission*, 262 U. S., 679; *Public Utility Commissioners et al* v. *New York Telephone Co.*, 271 U. S., 23.

Rates, however, may in no event be prohibitive, exorbitant or unduly burdensome to the public. The reasonableness of rates relates both to the utility and the consumer. The public is entitled to demand that no more be exacted from it for the services of a public utility in the form of rates or charges than the services rendered are reasonably worth. *Smyth* v. *Ames*, supra; *Minnesota Rate Cases*, 230 U. S., 352, 454; Mr. Justice Brandeis, in *S. W. Telephone Co.* v. *P. S. C.*, 262 U. S., 276, 290; *Water District* v. *Waterville*, 97 Me., 185, 54 A., 6; *Water District* v. *Water Co.*, 99 Me., 371, 59 A., 537; *Hamilton* v. *Power Co.*, 121 Me., 422, 117 A., 582.

The record shows that the hydrant service which this Company furnishes to Damariscotta is reasonably adequate, but admittedly open to improvement. The location of the fire pump and standpipe several miles distant from the village impairs the pressure when more than two fire streams are demanded and disproportionately increases the capital investment and cost of maintenance properly allocated to this service. The Commission notes that "a lack of adequate plant design is indicated," and, though deficiencies in this respect may in part be properly charged to the failure of

Newcastle and Damariscotta to coöperate in the erection of a new standpipe, as claimed by the utility, it is the plant as it exists and the hydrant service as now furnished with which the Commission was concerned.

According to public statistics Damariscotta is a comparatively small country town of less than one thousand inhabitants and a valuation for tax purposes of less than three-quarters of a million dollars. It has no large industries and, outside of the village proper, is not thickly settled. It maintains altogether only twenty-one hydrants and, according to data and testimony introduced into the evidence, the rate it now pays for its fire protection service is one of the highest in the State and substantially above the average. The amount of taxes which the town annually receives from the Company is here immaterial. Rates which should be paid for municipal service can not be measured in any part by the amount of taxes assessed upon the property of the utility. In re *Caribou Water Co.*, 121 Me., 426, 431, 117 A., 579; *North Berwick* v. *Water Co.*, 125 Me., 446, 134 A., 569. Nor can the fact that the town itself does not of record object to the increase in the hydrant rate have weight. Municipal expenses in the main come from the taxpayers' pockets. Due consideration of their rights can not be prejudiced because of official non-action.

The Commission found that the hydrant rates now paid by this municipality were all the service was reasonably worth. Its findings of fact on this issue, if supported by any substantial evidence, are final. *Hamilton* v. *Power Co.*, supra; *Utilities Commission* v. *Water Commissioners*, 123 Me., 389, 123 A., 177. Nor will a mere difference of opinion between the court and commission in the deductions from the proof or inferences to be drawn from the testimony authorize judicial interference. *Gilman* v. *Telephone Co.*, 129 Me., 243, 151 A., 440. Tested by these rules, the finding must be sustained.

We are not unmindful of the desirability from the standpoint of the Company of an increase in its revenue which would permit a stricter compliance with standard rules of accounting in the matter of depreciation, provide more moneys for anticipated increases in taxes, legal expenses and miscellaneous items which it deems proper and necessary charges to operating expense and,

after payment of fixed charges, leave a larger net income available for payment of dividends or passing to surplus, for, although it is not necessary to decide the point, the contention is not entirely unsupported by evidence that the payment of reasonably necessary operating expenses out of the revenue from existing rates will bring the return of the Company on the rate base here fixed nearer the range of its own estimate of 5.08 to 5.68 per cent than the 6.04 per cent computed by the Commission. Due regard for the rights of the public, however, does not justify casting the burden of an increase in this return from the entire rate system of the Company upon a single branch of its service which is now costing its full reasonable worth.

The observations of Judge Savage, in stating the opinion of the Court in *Water District* v. *Water Co.*, supra, p. 381, apply in the case at bar:

> "The company engages in a voluntary enterprise. It is not compelled, at the outset, to enter into the undertaking. It must enter, if at all, subject to the contingencies of the business, and subject to the rule that its rates must not exceed the value of the services rendered to its customers. It has accepted valuable franchises granted by the state, franchises ordinarily exclusive for the time being, franchises which ordinarily debar the public from serving themselves satisfactorily in any other way — and in return it must perform the duties to the public which it has voluntarily assumed, at rates not exceeding the value of the services to the public, taken as individuals, and this irrespective of the remuneration it may itself receive."

The exceptions can not be sustained on the ground that existing rates are unreasonable or confiscatory. The rule of *Hamilton* v. *Power Co.*, supra, must be followed here; "it would be quite as objectionable to take from the consumer more than the service was reasonably worth, as it would to deprive the Company of a fair return upon a fair value of its property. If the rates established represent the maximum reasonable value of the service to the consumer, it can not be said that they are confiscatory as to the Company, whatever may be the result upon its returns."

Counsel for the Company charges error in the admission into the evidence of certain tables prepared by the Chief Engineer of the Commission containing data taken from reports on file, showing hydrant rentals charged by other water companies and that the existing rate of this Company is among the highest. The exhibits were admitted for what they were worth. In the main, they are copies of public records and proved through examined copies. We find no prejudice in the consideration given them. The specific objections advanced on the brief go to the weight of this evidence, not its admissibility.

No error appearing in the decree of the Public Utilities Commission, the entry is

*Exceptions overruled.*