Hillsborough, } No. 4043.
July 2, 1951. }

CHICOPEE MANUFACTURING CORPORATION & a.

*v.*

MANCHESTER BOARD OF WATER COMMISSIONERS.

*McLane, Davis, Carleton & Graf* (*Mr. Carleton* orally), for the plaintiffs.

*J. Francis Roche*, city solicitor and *Joseph J. Betley* (*Mr. Betley* orally), for the defendants.

KENISON, J. The power of a court to pass on the reasonableness of charges made by a municipal water works, when not otherwise regulated by statute, is generally recognized. Anno. 127 A. L. R. 94, 101. Whether a preliminary injunction should be granted to restrain official action alleged to be unconstitutional and discriminatory need not be determined. *Tirrell* v. *Johnston*, 86 N. H. 530, 532; *Musgrove* v. *Parker*, 84 N. H. 550. In accordance with the usual practice in this state no injunction was granted and the disputed charges were held in a separate account to await the outcome of the litigation. *Studio* v. *Portsmouth*, 95 N. H. 171, 172.

The defendants derive their authority originally from Laws 1871, chapter 70 and Manchester ordinance of 1876, chapter 29. *Floyd* v. *Verrette*, 79 N. H. 316. Subsequent legislative changes were made in the fiscal management and the methods of financing the Manchester water works without changing its basic function of providing an adequate supply of water for public and private purposes including fire protection, at reasonable charges. Laws 1893, *c.* 183; Laws 1895, *c.* 172; Laws 1897, *c.* 128; Laws 1915, *c.* 320; Laws 1925, *cc.* 315, 346; Laws 1935, *c.* 323. During World War II the shortage of labor and materials prevented the defendants from making additions and improvements to the system and the water revenue (approximately $250,000) was placed in a capital reserve fund pursuant to general statutory authority. Laws 1943, *c.* 160; Laws 1945, *c.* 35; Laws 1947, *cc.* 8, 91. More than half of this revenue was used to construct a new pumping station in 1947 and 1948. Thereafter defendants decided on a five-year plan of capital improvements totalling $347,000 to be paid out of current income requiring addi-

tional annual income of $70,000 which resulted in the increase of metered rates and the disputed charges for private fire protection.

In this state the defendant municipal water works is considered a commercial enterprise. *Shea* v. *Manchester*, 89 N. H. 547. While its charges for water and fire protection "are for a commodity sold and are not taxes" (*Whitefield &c. District* v. *Bobst*, 93 N. H. 229, 231), its primary purpose is to provide adequate water and water service at reasonable charges. Revenue not needed to maintain or to improve the system will spell out a case of unreasonable water charges.

The problem of what allocation of costs, if any, shall be made between public fire protection and private fire protection and what method or theory shall be employed if an allocation is made is not easily solved. The problem "has always been a rather perplexing one." *Fleming* v. *Fergerson*, 161 Kan. 562, 574. Defendants concede that "it is a difficult matter" to arrive at an allocation of costs between public and private fire protection. Plaintiffs produced a competent expert who testified that there was "no method . . . by which to allocate what amount should be borne for private as against public fire protection." That the problem is still highly controversial is indicated by the following statement from an article by the same witness on the general subject: "Probably the most controversial subject in discussions on private fire protection is whether or not the water purveyors should make periodic charges if private fire protection systems are connected to and supplied, in whole or in part, by public water systems." Ellis, Charges for Private Fire Service, 42 Journal American Water Works Association 1009, 1011 (1950). As a matter of actual practice it appears from that article that 56% of municipal water systems do not make an annual charge for sprinkler service while 44% do make such a charge and the charge for private fire service is most frequently based on the size of the connections.

Plaintiffs argue that no allocation of expense or charges can be made for private fire protection without discriminating against them. Evidence was introduced that the plaintiffs are paying approximately 25% of the total of metered water charges while their property at which water is used is only about 20% of the assessed valuation of the city. The evidence was competent but it does not follow that these percentages must be equated. Taxes paid a municipality are not an accurate measure of the reasonable charge that should be paid for municipal water service. *Gay* v. *Water Co.*,

131 Me. 304. Taxes paid depend on assessed valuation and the latter is not considered a reliable index of value. *Beers* v. *Davidson*, 81 N. H. 326; *State* v. *Giles*, 81 N. H. 328. Moreover water service furnished to a property is not to be measured solely by the value of the property served.

It is said that discrimination is evident because the installation of private sprinkler systems and stand pipes caused no increased cappital and maintenance expense to the defendants and no additional demand. Defendants say that stand-by service is valuable additional service. Plaintiffs reply that although valuable and a service, it is not an additional service. "So long as water supplied for protection against fire is a purely public service, under the control and management of municipal authorities generally and under the fire department specifically, no direct charge to individuals is proper. When, however, a sprinkling connection is made with private premises, the situation is materially different. These premises and the primary causes of catastrophe to the building and of the consequent possible use of disastrous quantities of water are primarily under the control, not of the public, but of the owner. A peculiar personal service is provided for his benefit, which is not enjoyed in common by the community in general, but is available only to a limited class of individuals. It does not advance the reasoning in this connection to split hairs between the 'use' and the 'consumption' of water. As a matter of good sense the property owner beneficially employs the water mains for his own purposes and to his own advantage, although he may not, except in case of fire, actually draw any water from the pipes. It is necessary and proper that for this he should pay." *Gordon & Ferguson* v. *Doran*, 100 Minn. 343, 350. If theory and statistics tend to support the position of the plaintiffs, the great majority of the cases support the defendants. To the same effect see *Edgerly* v. *Ottumwa*, 174 Iowa 205; anno. 37 A. L. R. 1511.

The plaintiff's claim in this case is not a frivolous one but they have the burden of showing that the charges are unreasonable and discriminatory. The large number of cases and public utility commission decisions that have been examined recognized the difficulty in applying any strictly logical and completely accurate formula to allocate the cost of private fire protection. However, they are generally unanimous in recognizing that private fire protection confers a special benefit for which some charge may be sustained providing it is not unreasonable. It cannot be overlooked that private fire

protection is·necessitated because the owner of the property either creates the fire hazard, or it is inherent in his business or the private fire protection is required by law. In either event, special fire protection may be necessary for which a charge may be exacted.

The question of reasonableness is always a matter of degree and must initially be based on opinion and judgment. Originally the defendants proposed to make a charge for private fire protection of $5 per square inch of connections to its mains but this was finally reduced to the present charge of $3. If the present charges were increased to the originally proposed charges, the plaintiffs' case would undoubtedly be much stronger. However on the present record, we cannot say as a matter of law that the evidence requires a finding that the rates are unreasonable or discriminatory.

Since the defendants have established there is some reasonable basis for charging for private fire protection because it is an additional service to the plaintiffs, the municipal water works cannot be compelled to provide such additional service without compensation. See *Opinion of the Justices*, 93 N. H. 478, 482. " 'Stand by' protection against fire is service whether the instrumentalities be animate or inanimate." *Farmington TP.* v. *Warrenville State Bank,* 185 F. (2d) 260, 263. By the same token, it may be said that stand-by protection against fire is service whether the water is used or not.

*Case discharged.*

All concurred.